## LYNN GOYTIZOLO *v.* TRUDY MOORE
## (9798)

DUPONT, C. J., LAVERY and LANDAU, Js.

Argued November 1, 1991—decision released February 28, 1992

*Trudy Moore,* pro se, the appellant (defendant).

*Kevin P. Thornton,* with whom was *Michele A. Caulfield,* for the appellee (plaintiff).

DUPONT, C. J. The defendant, Trudy Moore, appeals from a judgment of the trial court ordering her to convey certain real property to her daughter, the plaintiff, Lynn Goytizolo. The issues of this appeal are (1) did the defendant create an irrevocable trust for the benefit of the plaintiff, (2) was the defendant's husband an indispensable party, (3) did the trial court abuse its discretion in weighing the credibility of certain testimony and in making certain evidentiary rulings, (4) did the trial judge's illness during trial cause a delay that prejudiced the defendant's right to a fair trial, and (5) did the trial court's memorandum of decision evidence bias and prejudice against the defendant.

On June 23, 1955, the defendant purchased a parcel of real estate located in Southbury for $1500, which was deeded to her in fee simple absolute. She purchased the land with her own funds. Two months later, on August 12, 1955, she conveyed by quitclaim deed that same property to her mother, Bergliot Holm-Hansen, "in trust for Lynn Holm-Hansen also known as Mary Lou Dietrich." Both deeds were recorded on the land records of the town of Southbury. The plaintiff is the granddaughter of Bergliot Holm-Hansen and is the beneficiary named in the latter deed. At the time of the conveyance, she was a minor. She is now known as Lynn Goytizolo.

On June 29, 1973, Bergliot Holm-Hansen conveyed the same real estate by quitclaim deed to the defendant "in trust for Lynn Holm-Hansen also known as Mary Lou Dietrich" and further "for herself reserve[d] a right to use the property so long as she may live." See footnote 3, infra. This deed was also recorded and

the plaintiff was informed of the conveyance shortly thereafter. At the time of this deed, the defendant was known as Trudy Holm-Hansen Moore.

On August 12, 1987, the defendant, "both individually and as trustee for Lynn Holm-Hansen now known as Lynn Goytizolo," executed a quitclaim deed to the defendant's husband, Jesse G. Moore, making no mention of the trust in favor of the plaintiff. In a second deed, recorded immediately thereafter, Moore conveyed the property back to the defendant, again making no mention of the trust.

The plaintiff filed a complaint on May 17, 1988, seeking to have the 1987 deeds conveying the property from the defendant to Moore and back to the defendant declared null and void. The defendant's husband was neither named in the complaint nor was he joined in the action.

The trial court found that the August, 1955 deed had created an enforceable trust in favor of the plaintiff and ordered the defendant to deed the property to the plaintiff and voided the 1987 deeds. The court, in reaching its conclusions, found that the basic elements of a passive or dry trust existed, and that the defendant's intent to create a trust was manifested in the conveyance itself, the circumstances surrounding it, and in the defendant's subsequent affirmations and actions.

The principal questions presented are whether a conveyance of real estate by a deed that describes particular real estate and simply states that the real estate is held "in trust for" a beneficiary, and names a trustee, is sufficient for the establishment of a trust by the grantor of the real estate, and, if so, whether the settlor-grantor of such a trust has the power to revoke it. Specifically, we must decide if the defendant by her execution of the August, 1955 deed established a trust for

the benefit of the plaintiff and, if so, could the trust be revoked by the defendant's execution of the 1987 deeds.

Some of the subordinate facts found to support the trial court's conclusion that a trust was created were that the defendant had consistently stated to the plaintiff that the property belonged to the plaintiff and that the defendant conveyed the property in trust in 1955 so that the plaintiff would have security. The court found that until 1987 the defendant had affirmed that the real estate was in trust for the benefit of the plaintiff. The court noted that the defendant claimed at trial that the 1955 conveyance was made because she was driving without insurance and could lose the property if she was sued. Some of these findings, of course, rest on the credibility of the witnesses as determined by the trial court, which has within its province that responsibility, unfettered by appellate overview. Other findings were that the defendant's father erected two prefabricated cottages on the land, that, between 1955 and 1970, the defendant paid the real estate taxes, and that, between 1981 and 1987, the plaintiff and her husband made repairs to the cottages costing between $40,000 and $50,000.

A trust requires three basic elements: (1) a trust res; (2) a fiduciary relationship between a trustee and a beneficiary requiring the trustee to deal with the trust res for the benefit of the beneficiary; and (3) the manifestation of an intent to create a trust. See 1 Restatement (Second), Trusts § 2; see also *Marzahl* v. *Colonial Bank & Trust Co.*, 170 Conn. 62, 64, 364 A.2d 173 (1976); *Colonial Bank & Trust Co.* v. *Matoff*, 18 Conn. App. 20, 28, 556 A.2d 619 (1989). "[A] simple conveyance of property to one upon trust for another, without further specifications or directions" is a simple trust. *Cone* v. *Dunham*, 59 Conn. 145, 157, 20 A. 311 (1890). "In such case the law regulates the trust, and the [benefi-

ciary] has the right of possession and of disposing of the property, and he may call upon the trustee to execute such conveyances of the legal estate as are necessary." Id.

"Trusts in which no duties recognized as active are imposed on the trustee, or trusts which serve no purpose that could not equally be served without the trust, have been held to be simple, passive, or dry, and, although the most express words of trust are used, no estate or interest passes to the trustee other than at most a mere naked legal title which may be terminated on application to the court by the [beneficiary]." 90 C.J.S. Trust § 178 (1955). Section 46 of Restatement (Second) of Trusts deems that type of conveyance sufficient to satisfy the statute of frauds if "it sets forth with reasonable definiteness the trust property, the beneficiaries and the purposes of the trust." Comment a to § 46 further states that "[i]f the owner of the property . . . transfers it 'in trust' for a named person without specifying further the purpose of the trust, the writing sufficiently designates the purpose of the trust since it is a declaration of a passive trust of the property for the intended beneficiary."

We agree with the trial court that the August, 1955 deed contained language sufficient for the establishment of a trust and that, on the basis of facts found by it, the defendant intended to create a trust.

The next question that we must answer is whether the trust was revocable or irrevocable. Although the defendant does not expressly raise the issue of revocability, she does so impliedly. She argues that she established a trust in order to shelter her real estate property only until such time as she had automobile insurance coverage, and that once that purpose no longer existed, she would be able to regain title. The defendant became insured under Moore's policy in 1962 but from 1962 to

1987, there was no deed executed or recorded on the land records that did not contain trust language. The land records do not indicate any attempt to disavow or revoke the trust over a thirty-two year period, after which the defendant conveyed the real estate to her husband.

The trial court made no express findings regarding the revocability of the trust. General principles of trust construction require an express reservation of the right to modify, amend, or revoke a trust. 2 Restatement (Second), Trusts § 330.[1] One exception to this rule is in cases where the settlor mistakenly omitted the power to revoke the trust. See 2 Restatement (Second), Trusts § 332.[2] Certain factors are relevant in determining whether the settlor intended to reserve the power to revoke a trust and by mistake omitted such a power in the trust instrument. Some of these factors are: "(1) the fact that the creation of the trust without reserving power of revocation would be an improvident act of the settlor; (2) the fact that the settlor when he created the trust did not have independent legal advice; (3) the relationship between the settlor and the beneficiaries; (4) the reasons which induced the settlor to create the trust . . . ." 2 Restatement (Second), Trusts § 332, comment (a).

---

[1] 2 Restatement (Second), Trusts § 330 provides: "Revocation of Trust by Settlor (1) the settlor has power to revoke the trust if and to the extent that by the terms of the trust he reserved such a power. (2) Except as stated in §§ 332 and 333, the settlor cannot revoke the trust if by the terms of the trust he did not reserve a power of revocation."

[2] 2 Restatement (Second), Trusts § 332 provides: "Power of Revocation or Modification Omitted by Mistake (1) If a trust is created by a written instrument and the settlor intended to reserve a power of revocation but by mistake omitted to insert in the instrument a provision reserving such a power, he can have the instrument reformed and can revoke the trust. (2) If a trust is created by a written instrument and the settlor intended to reserve a power to modify the trust but by mistake omitted to insert in the instrument a provision reserving such a power, he can have the instrument reformed and can modify the trust."

In this case, there was no reservation of the right to revoke the trust. Nor was there anything to indicate that the defendant mistakenly omitted the right to revoke. Nothing suggests that the creation of the trust without a power of revocation was an improvident act. The defendant-settlor consulted an attorney who drafted the August 1955 deed. The relationship between the settlor and the beneficiary as mother and daughter is a factor in favor of the creation of a trust, and the enduring nature of that relationship ordinarily belies the need to revoke a trust for the benefit of either. Even if the defendant's testimony regarding her reasons for creating the trust were true, many years elapsed after the defendant became insured during which period nothing was recorded on the land records that attempted to revoke the trust. We conclude that the trial court was correct in finding that the deeds to the defendant's husband and from the husband to the defendant were void. This finding impliedly rests on a finding that the trust could not be revoked. We, therefore, agree with the court's judgment that the defendant convey the real estate to the plaintiff.[3]

The defendant alleges that her husband was an indispensable party to the action because, at the time Bergliot Holm-Hansen deeded the property to her in 1973 she was living in Texas, a community property state. She asserts that the laws of Texas would give her husband an interest in the real estate, and that he should have been a party. The defendant held title to the real estate as trustee in 1973, and had no beneficial interest in it. Her spouse cannot, therefore, acquire rights in real estate she holds as a fiduciary even in a com-

---

[3] The court did not specifically mention the life estate reserved in the 1973 deed. The trial court impliedly recognized that the reservation of the life estate was of no effect. Bergliot Holm-Hansen, as trustee, had no power to modify the trust because the 1955 deed to her gave no power to modify the trust and because there was no necessity for a modification in order to effectuate the purposes of the trust. 1 Restatement (Second), Trusts § 186.

munity property state. The 1987 deed is insufficient to vest him with the status of either an indispensable or necessary party. See *Stamford Ridgeway Associates* v. *Board of Representatives,* 214 Conn. 407, 439, 572 A.2d 951 (1990); *Biro* v. *Hill,* 214 Conn. 1, 5–6, 570 A.2d 182 (1990).

The defendant contends that the trial court abused its discretion by considering the unsworn statement of Veb Holm-Hansen, the defendant's brother, dated July 24, 1988, because his statements were inherently unreliable and inadmissible. The record reveals that the statement was one of eleven items marked as court exhibits by agreement of the parties. It was never referred to again by any party or witness, or the court in its decision. Since the exhibit was entered with the consent of the defendant, the trial court would not have abused its discretion, even if it did consider it.

The defendant raises several objections to the admission of evidence at trial. These claims were not properly preserved and we need not consider them. Practice Book § 4185.

The defendant also claims that she was prejudiced because of a delay in the trial from May 3, 1990, to June 9, 1990, that was caused by the judge's illness. The defendant neither objected to the resumption of the trial nor sought to disqualify the trial judge because of her illness. The trial recessed on May 3, 1990, during direct examination of the plaintiff. When the trial resumed on June 19, 1990, the defendant attempted to prevent the plaintiff from continuing direct testimony. The court denied the motion. The defendant clarified her objection, stating that the plaintiff's testimony should be limited to "new testimony," and that she should be prevented from elaborating on matters she forgot to testify to previously. Upon review of the six

questions the plaintiff answered after the defendant's motion, we find that there was no abuse of discretion by the trial court.

The defendant alleges that various findings in the memorandum of decision evidence the trial court's bias against her. Upon review of the statements claimed to be offensive, we conclude that no such bias is present.

The judgment is affirmed.

In this opinion the other judges concurred.