[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION CT Page 10377-H RE: SEVERAL MOTIONS, INCLUDING MOTION FOR CONTEMPT FOR FAILURE TO ESTABLISH POST JUDGMENT TRUST FOR MINOR CHILDREN
The Court has been requested by the parties to decide the following motions:
1) Plaintiff Madeline Schwab's Motion for Contempt[1], dated September 5, 1991 relative to the Defendant's alleged failure to ". . . maintain Blue-Cross and Blue Shield and major medical insurance coverage or their equivalent for the benefit of the minor children . . . and pay all medical . . . and dental expenses for the two minor children," as required by their judgment of dissolution. Furthermore, this motion seeks a contempt finding for the Defendant's not paying ". . . one-half of all parochial and private school expenses for the two minor children," as required by the judgment.
2) Defendant Jerome Schwab's Motion for Contempt, dated August 28, 1992, relative to the Plaintiff's failure to establish for CT Page 10377-I their children a trust — required in their judgment — the corpus for which should have been certain proceeds from the sale of their marital home.
3) Plaintiff Madeline Schwab's Motion for Contempt, dated November 4, 1992 relative to the Defendant's alleged failure to keep his child support payments current.
4) Defendant Jerome W. Schwab, Jr's Motion for Modification dated January 29, 1993 which seeks to eliminate the requirement in the November 10, 1981 judgment of dissolution that he and Plaintiff Madeline Schwab ". . . each pay one-half of all parochial and private school expenses for the two minor children;" and
5) Plaintiff Madeline Schwab's Motion for Modification, dated July 3, 1993 seeking to increase the Defendant's child support obligation so as to conform it to the child support guidelines.
 Plaintiff Madeline Schwab's Motion for Contempt, dated September 5, 1991
In this motion for contempt, Plaintiff Madeline Schwab claims CT Page 10377-J that Defendant Jerome Schwab failed to ". . . maintain Blue Cross and Blue Shield and major medical insurance coverage or their equivalent for the benefit of the minor children . . . and pay all medical . . . and dental expenses for the two minor children," and failed to pay one-half of the children's parochial and private school expenses as required by their judgement of dissolution, dated November 10, 1981.
The Defendant testified that 1) he lost his medical insurance coverage at Ansonia Copper Brass Company in July of 1991 when his employment there was terminated; 2) he did not have employee insurance coverage thereafter until his employment with the Waterbury Rolling Mills Company in March of 1993; and 3) the Plaintiff first informed him of some of the children's medical bills in August of 1991.
The Plaintiff testified that she did not give the Defendant any medical bills for the children between November of 1981 until the beginning of 1985. Nevertheless, it is significant that the language of the judgment does not link employer-provided insurance to the creation or discharge of the obligation to provide insurance CT Page 10377-K and/or to pay the children's medical and dental expenses. However, the Court does not find that the Defendant willfully violated the Court judgment and does not find him in contempt for not previously paying the medical bills.
Although the language of the judgment as to the Defendant's obligation to provide medical coverage for the children is unconditional, this Court's reluctance to enforce the entirety of the obligation is supported by the Defendant's argument of laches
 "Laches consists of two elements. First there must have been a measurable delay by one party, and second, that delay must have prejudiced the other party. The mere lapse of time does not constitute laches unless it resulted in prejudiced to the [defendant], as where, for example, the [defendant] was led to change his position with respect to the matter in question."
Lownds v. Lownds, 41 Conn. Sup. 100, 106 (1988). CT Page 10377-L
There is no credible evidence that the Plaintiff, as the custodial parent, presented the medical bills to the Defendant in any timely manner. The evidence is clearly to the contrary. It is clear that the Defendant was in a much better financial position to pay the 1980's children's medical bills in the 1980's rather than he is now.
Accordingly, this Court finds that Plaintiff's claim for the children's 1980's medical expenses is barred by the doctrine of laches. However the Court orders the Defendant to pay all such bills incurred after December 31, 1989.
Furthermore, the Court finds that the Plaintiff's claims for reimbursement for the children's educational expenses also are barred by the doctrine of laches. In addition, the Court notes in more than mere passing that the Defendant did not receive any timely notice of matriculation. Cleveland v. Cleveland, 161 Conn. 453
(1971).
Plaintiff Madeline Schwab's Motion for Contempt, dated CT Page 10377-M November 4, 1992
In her Motion for Contempt, dated November 4, 1992, Plaintiff Madeline Schwab seeks a finding of contempt for the Defendant's failure to tender certain child support payments ordered by Judge Curran. The Defendant claims that he made certain reduced payments in anticipation of a modification of his support order pursuant to a Pending Motion for Modification. Given the circumstances in this case the Court finds that the Defendant's reduced payments were not the result of contemptuous conduct. The Defendant acknowledges the resultant shortfall to be $648.00.
 Defendant's Motion for Modification, dated January 29, 1993
In his Motion for Modification, dated January 29, 1993, the Defendant requests the Court to eliminate his Court-ordered responsibility, set out in the 1981 judgment, to pay one-half of all parochial and private school expenses for the two minor children. The Defendant argues in part that since the child support guidelines require a higher level of financial support from CT Page 10377-N him, he does not have funds sufficient to honor the Court order. Furthermore, the Defendant argues that the parties' children's educational needs are being met satisfactorily in public school and that there is no demonstrated need for private or parochial schooling for the children. The facts also reveal that the Defendant and the Plaintiff have remarried other persons and undertaken other financial obligations.
The Court finds that the parties' remarriages and attendant changes in their finances and households are factors which have contributed to a substantial change in their circumstances.
Inasmuch as there is insufficient evidence that the educational needs of the minor children can be satisfied only in parochial or private school, Hardisty v. Hardisty, 183 Conn. 253
(1981), the Court hereby vacates that part of the judgment that obligates each party to pay for parochial or private schooling.
 Plaintiff's Motion for Modification Re: Support, dated July 3, 1993.
This motion seeks compliance with the child support CT Page 10377-O guidelines. The Court finds the appropriate figure for child support to be $194.00 per week and orders the Defendant to pay the same retroactive to July 9, 1993, the date of the Plaintiff's filing of the Motion for Modification. The arrearage caused by this order shall be paid at the rate of 10.00 per week.
An immediate wage execution shall issue to secure the payment of child support, as well as all child support arrearages.
 Defendant Jerome Schwab's Motion for Contempt, Dated August 28, 1992 Relative to Plaintiff's Failure to Establish Trust for Minor Children
The issue to be addressed in ruling upon this motion is whether noncompliance with a separation agreement incorporated into a divorce decree, requiring one party to place in trust for the benefit of the minor children a portion of the proceeds of the sale of the family home, constitutes contempt. Plaintiff Madeline Schwab and Defendant Jerome Schwab received a Court judgment dissolving their marriage on November 10, 1981. This decree incorporated the parties' separation agreement dated September 14, CT Page 10377-P 1981. Said agreement required the "[h]usband to transfer by quitclaim deed his interest in the family dwelling located at 15-17 Nichols Street, Ansonia, Connecticut, subject to a first mortgage therein. Whenever said dwelling [was to be] sold, one-half of the net proceeds from any such sale [was to] be held in trust for the benefit of the minor children, by the Wife."
The Defendant alleges that the Plaintiff failed to place one-half of the proceeds of the sale in trust for the benefit of the children and the Plaintiff has admitted that no trust was established. The closing statement of the sale of the family home indicates that $93,000 from the sale paid off the first mortgage; $11,000 paid off the second mortgage; and that the Plaintiff received a net check in the amount of $40,000. The Defendant alleges that the $40,000 was used to buy a pool at the Plaintiff's new home, siding on the house, a whirlpool bath and two large trucks for the Plaintiff and her husband. In addition, the first mortgage was increased from the original mortgage on the property.
The Plaintiff testified that she forgot that she was obligated to place one-half of the net proceeds of the sale in trust for the CT Page 10377-Q benefit of the minor children. She also testified in the alternative that the aforementioned purchases were for the benefit of the minor children.
The Plaintiff may owe a fiduciary duty to the children to establish the trust, a contractual duty to the Defendant to perform on the separation agreement, and a duty to obey the Court's order.
The Court must first examine the separation agreement to determine whether it imposes the obligation of creating a trust upon the Plaintiff. A trust requires a trust res, a fiduciary relationship between a trustee and a beneficiary requiring the trustee to deal with the trust res for the benefit of the beneficiary, and the manifestation of an intent to create a trust. Goytizolo v. Moore, 27 Conn. App. 22, 604 A.2d 362, 364 (1992) (citing 1 Rest.2d Trusts 2 (1959)).
The Connecticut Supreme Court has held that a separation agreement incorporated into a dissolution decree should be construed as a contract. See Barnard v. Barnard, 214 Conn. 99[,]570 A.2d 690 (1990). "A contract is to be construed as a whole and all CT Page 10377-R relevant portions will be considered together." Barnhard, supra at 109, 570 A.2d at 696 (citing 17 Am.Jur.2d, Contracts 258). In giving meaning to the terms of a contract, [the Court] has said that `a contract must be construed to effectuate the intent of the contracting parties.' In ascertaining intent, [the Court] considers not only the language used in the contract but also the circumstances surrounding the making of the contract, the motives of the parties and the purposes which they sought to accomplish." Barnard, supra, at 109, 570 A.2d at 696 (citing Marcus v. Marcus,175 Conn. 138, 141, 394 A.2d 727, 729 (1978).
"The intention of the parties to the contract is to be determined from the language used interpreted in the light of the circumstances connected with the transaction. The question is not what intention existed in the mins of the parties but what intention is expressed in the language used." Barnard, supra, at 110. In addition, when interpreting a contract, "the words used by the parties must be accorded their common meaning and usage where they can be sensibly applied to the subject matter of the contract ." Beach v. Beach, 141 Conn. 583, 589. Although the Plaintiff asserted that in making the aforementioned "purchases" CT Page 10377-S she provided for the benefit of the children, "[a]ny agreement or contract whereby a person agrees that property in him by its legal title shall be dealt with in a particular manner for the benefit of another raises a trust in favor of such other person. 76 Am.Jur.2d, Trusts 86, see Goytizolo, supra, at 23-26, 604 A.2d at 363-65. "A valid trust agreement may be created by a written property settlement agreement which has been incorporated into the terms of a divorce decree." 76 Am.Jur.2d, Trusts 86 (1990) (citing Re Estate of Binder, 386 N.W.2d 910, 911 (1986), where the Court found that the following language established a valid trust agreement: ". . . it is understood and agreed that the value of the property greatly exceeds the mortgage against it and that said property shall be held in trust for the benefit of the children of the parties."); see also Kronholm v. Kronholm, 16 Conn. App. 124 129 (1988).
The marital home was property which was held by the Plaintiff by its legal title, as a result of the quitclaim deed granted by the Defendant. The trust res was to be made up of one-half of proceeds of the sale of the family home. The Plaintiff assented to the separation agreement, which delineated a fiduciary relationship CT Page 10377-T between the Plaintiff and her children by requiring the Plaintiff to handle one-half of the proceeds for the benefit of the children, and subsequently, manifesting an intent to create a trust. Therefore, the Plaintiff obligated herself to create an express trust for the benefit of the minor children.
The attorney appointed for the minor children has asserted that the children "have expressed specific opinions about the imposition of funding a trust upon their mother. Both children, when interviewed by their attorney, did not feel that their mother should be forced to open a trust fund if this would be economically feasible." "If the trustee commits a breach of trust without the consent of the beneficiary previously given, he may nevertheless be relieved of liability if the beneficiary subsequently discharges him by contract or accord and satisfaction or by a release." Scott on Trusts, 217 (1988). Therefore, the children are in essence attempting to discharge the Plaintiff's duty to establish the trust. However, "the discharge is ineffective if the beneficiary was an infant or otherwise not sui juris." Scott on Trusts, 217 (1988). Therefore, despite the children's attempted discharge, the Plaintiff continues to owe a fiduciary duty to the children to CT Page 10377-U establish the trust. In fact, the children may, as third-party beneficiaries, bring an action against the Plaintiff to enforce the separation agreement, because it provides for their support and education 24 Am.Jur.2d, Divorce Separation, 863 (1983 Supp. 1991).
However, "[n]o one other than a beneficiary or one suing on his behalf can maintain a suit against a trustee to enforce a trust." Scott on Trusts, 200 (1988), p. 1642. Therefore, the Defendant, who is not a beneficiary to the trust, cannot invoke the fiduciary duty owed to the children in order to maintain his suit. The Defendant, may, however, bring this contempt motion because "enforcement of an equitable decree maybe achieved by a motion for contempt." Connecticut Civil Procedure 224 (Sup. 1981).
In addition, the Defendant may bring a contract action because "[the property transfer provisions of separation agreements maybe enforceable at law or in equity upon the same terms as other contracts." Clark on Domestic Relations, 19.8 (199-); see MacFarlane v. MacFarlane, 178 Conn. 406, 411, 423 A.2d 109, 112
(1979). CT Page 10377-V
"To find a party in contempt, a trial Court must conclude that a party has disobeyed an order of the Court. Contempt is a disobedience to the rules and orders of a Court which has power to punish for such an offense . . . A civil contempt is one in which the conduct constituting the contempt is directed against some civil right of an opposing party and the proceeding is initiated by him." Castro v. Castro, 31 Conn. App. 761 (1993) (citing Fitzgerald v. Fitzgerald, 16 Conn. App. 548, 551, 547 A.2d 1387, cert. denied,210 Conn. 802, 553 A.2d 615 (1988).
In order to hold one in contempt for violation of a Court order, it must be shown that the alleged contemnor wilfully disobeyed the order. See 24 Am.Jur.2d, Divorce Separation, 961; see also Gallagher v. Gallagher, 11 Conn. App. 509, 513
(1987); Turgeon v. Turgeon, 190 Conn. 269, 282, 460 A.2d 1260, 1268
(1983); Connolly v. Connolly, 191 Conn. 468, 483, 464 A.2d 837, 846
(1983). Yet, although "[a] wilful failure to comply with an outstanding Court order may constitute a civil contempt, a finding of contempt depends upon the facts and circumstances surrounding it." Marcil v. Marcil, 4 Conn. App. 403, 405 494 A.2d 620, 622
CT Page 10377-W (1985); see also Tufano v. Tufano, 18 Conn. App. 119, (1989); Turgeon, supra, at 284, 460 A.2d at 1268; Dukes v. Durrante,192 Conn. 207, 228, 471 A.2d 1368 (1984). These facts and circumstances may include an inability to obey an order of the Court. An inability, without fault, is a good defense to a charge of contempt. Turgeon, supra, at 283, 460 A.2d at 1268 (citing Tobey v. Tobey, 165 Conn. 742, 746, 345 A.2d 21 (1974)). In the present case, the Plaintiff had the ability to place one-half of the proceeds into a trust for the benefit of the children. The family home sold in 1987, with $93,000 discharging the first mortgage, and $11,000 discharging the second mortgage, leaving $40,000, one-half of which was to be placed in trust for the benefit of the children. The Plaintiff claims in her defense that the children would have been subjected to a 28% capital gains tax had the proceeds been transferred to them. However,
 difficulty or even improbability of accomplishment without a financial loss will not release a party from his contract . . . inconvenience or the cost of completion, though they might compel a hardship cannot excuse a party from the performance of an absolute and unqualified CT Page 10377-X undertaking to do a thing this is possible and lawful, inasmuch as the parties sui juris bind themselves by their lawful contract, and courts cannot alter them because they work a hardship.
17A Am.Jur.2d Contracts, 669 (1991).
This is so even when the increased cost or hardship results from the interference of law or government regulations. Therefore, the Plaintiff's claimed hardship of having to pay capital gains tax did not relieve her of the duty to establish the trust. Therefore, the Plaintiff may not invoke the inability defense.
Disobedience of a Court order does not constitute a wilful violation where there is a legitimate dispute, see Bucy v. Bucy,23 Conn. App. 98, 579 A.2d 117, 119 (1990), or a mistaken perception, see Marcil, supra at 405, 494 A.2d at 622, regarding the decree. The Plaintiff claimed that she provided for the benefit of the children by making other "purchases." However, ". . . in violating judgment, a person's good intentions are not enough to relieve him from liability for contempt." 17 Am.Jur.2d, Contempt 39 (1990). CT Page 10377-Y Therefore, the Plaintiff may not assert the defense of mistaken perception or legitimate dispute regarding the requirements of the separation agreement.
The Court finds that inasmuch as Plaintiff Madeline Schwab signed the separation agreement which includes the requirement to set aside the trust funds, and inasmuch as she had the ability to establish the trust, her noncompliance constitutes contempt.
The Defendant in his prayer for relief asks the Court to order the Plaintiff to contribute either a portion of her income or a portion of future child support for the establishment of a trust fund. However, the Court is obligated to follow the State's Child Support Guidelines, because "[t]he amount of support indicated by the guidelines schedule is presumed to be the appropriate level of support. The Court is allowed to rebut this presumption only where there is "a specific finding on the record that the application of the guidelines would be inequitable or inappropriate in a particular case, as determined by proof of the existence of one of the deviation criteria." Child Support Guidelines, Section (a) (3); Conn. Gen. Stat. 46b-215b; see also Favrow v. Vargas, 222 CT Page 10377-Z Conn. 699, (1992).
The Court does not find that the facts of this case fit into any of the deviation criteria as set out in the Child Support Guidelines, especially the catch-all criterion, "other equitable factors." See Guidelines, section (a)(3)(n). In Favrow, the Court did not allow this criterion to permit the Court to deviate from the guidelines solely on the basis of the noncustodial parent's actual living expenses, which would in effect permit the exception to swallow the rule that support of the dependent child should be the parent's primary obligation. Favrow, at 708-09. To allow deviation in the case at bar based on a parent's violation of a Court order designed for the benefit of the children, would be inconsistent with the circumscribed discretion imposed on the trial Court by the guidelines. Therefore, the Court denies the Defendant's request that future child support payments be placed in trust in order to restore the corpus of the trust.
REMEDY RE TRUST
As stated earlier, the 1981 judgment of dissolution obligated CT Page 10377-AA Plaintiff Madeline Schwab to hold the following in trust for the benefit of the minor children: one-half of the net proceeds from the sale of the parties' marital premises. Inasmuch as the Plaintiff did not comply with the foregoing directive, this Court issues the following
ORDER RE CORPUS OF TRUST
On or before January 7, 1994, Plaintiff Madeline Schwab shall issue a note, payable to Jerome W. Schwab, and Madeline Taggert Co-trustees, in the amount of $20,357.00, with interest at the rate of 6 per cent per annum from the present to the date next following the date of closing on the parties' former marital premises. To secure said note Plaintiff Madeline Schwab simultaneously shall issue a mortgage in said amount which shall be recorded on or before January 15, 1994 upon the premises known as 106 Prokop Road, Oxford, Connecticut in which she has an ownership interest.
An amount under the note and mortgage equal to one-half of the value of the note shall mature no later than July 1, 1995; and an amount under the note and mortgage equal to the remainder shall CT Page 10377-BB mature no later than January 1, 1997. In addition, Plaintiff Madeline Schwab shall contribute $25.00 per week, commencing February 1, 1994, to replenishing the corpus of the trust.
The aforesaid note, weekly payments and mortgage are designed respectively to restore and secure the corpus of the aforesaid trust.
RESPONSIBILITIES OF CO-TRUSTEES
On or before April 1, 1994 the co-trustees with the aid of counsel shall have met and prepared a written trust instrument addressing their roles, responsibilities as well as specific plans and approximate dates relative to investments and disbursements relative to discharging their responsibilities as co-trustees.
COUNSEL FEES
Each party shall be responsible for paying her/his respective counsel fees.
REFERRAL TO GRIEVANCE COMMITTEE CT Page 10377-CC
Attorney Herbert Savitt, counsel for Plaintiff Madeline Schwab, claims that Attorney Jeffrey Ginzberg called him a "lying lawyer" at the hearing on February 11, 1993. There were several dates of testimony on the motions presented in this case, and the Court reserved its decision as to its response to Attorney Savitt's claim until the conclusion of the proceedings. Accordingly, the Court has decided to forward the matter to the Statewide Bar Counsel, pursuant to Section 27F of the Connecticut Practice Book. A copy of the excerpted transcript of the hearing of February 11, 1993 — provided by Attorney Herbert Savitt — shall accompany the Court's referral.
Clarance J. Jones, Judge