In re **CARROZZELLA & RICHARDSON,** Debtor.

**Michael J. Daly, Trustee, Plaintiff,**

v.

**Christina Radulesco and George Radulesco, Defendants.**

**Bankruptcy No. 95–31231. Adversary No. 97–3010.**

United States Bankruptcy Court, D. Connecticut.

Aug. 18, 1999.

Douglas S. Skalka, Neubert, Pepe & Monteith, P.C., New Haven, CT, for Plaintiff–Trustee.

Robert G. Wetmore, Robert G. Wetmore P.C., Wallingford, CT, for Defendants.

## MEMORANDUM OF DECISION ON COMPLAINT TO AVOID PREF-ERENTIAL TRANSFERS

ALBERT S. DABROWSKI, Bankruptcy Judge.

### I.  INTRODUCTION

This adversary proceeding follows in the tragic wake of a pattern of fraud perpetrated by the Debtor's principals upon, *inter alia*, their clients.  The present De-

fendants, like scores of other clients of the Debtor over a period spanning two decades, entrusted significant personal funds to the Debtor's care. Due to gross mismanagement and misappropriation by its principals, the Debtor ended up hopelessly insolvent and in liquidation in this Court. In an effort to create some measure of distributional equality among innocent fraud victims, the Plaintiff–Trustee has commenced, *inter alia,* a series of avoidance actions against individuals, such as the present Defendants, who received funds from the Debtor within the preferential transfer "look-back window" of Bankruptcy Code Section 547(b)(4).

As detailed in this Memorandum of Decision, under the unique facts underlying this adversary proceeding, the Court is convinced that the funds transferred to the Defendants by the Debtor within the "preference period" were impressed with a trust for their benefit. As such, the transfer of those funds was not a transfer of "an interest of the debtor in property", and consequently cannot form the basis for preference avoidance by the Plaintiff under Section 547(b).

## II. JURISDICTION

The United States District Court for the District of Connecticut has subject matter jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this proceeding on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(F).

## III. FACTUAL BACKGROUND

This proceeding is before the Court for decision after trial. The Court's findings of fact are derived from the following sources: (i) the parties' "Stipulation to Facts and the Admissibility of Documents

as Full Exhibits", (ii) the evidentiary record at trial, and (iii) the Court's independent examination of the official record of the instant case and adversary proceeding.

On July 19, 1995 (hereafter, the "Petition Date"), an involuntary petition (hereafter, the "Petition") was filed in this Court against the Debtor, Carrozzella & Richardson, seeking relief under Chapter 7 of the Bankruptcy Code. On August 21, 1995, an Order for Relief entered upon the Petition, and thereafter the Plaintiff, Michael J. Daly was appointed as trustee of the Debtor's Chapter 7 bankruptcy estate.

The Defendants are mother and son. The Defendant Christina Radulesco (hereafter, "Christina")—now deceased [1]—was a client of Attorney John Carrozzella (hereafter, "Attorney Carrozzella"), a general partner of the Debtor. Christina retained Attorney Carrozzella to assist her in recovering over 20 years' of maintenance payments past-due from her husband—the father of Defendant George Radulesco (hereafter, "George")—from whom she was long-separated. Due to Christina's advanced age and limited English language skills, George dealt extensively with Attorney Carrozzella on her behalf.

George was also his father's conservator, with fiduciary control over liquid assets totaling more than $125,000.00. In or about July, 1994, in anticipation of a judicial award in favor of Christina for the past-due maintenance payments, Attorney Carrozzella convinced George to take the sum of $110,000.00 from his father's conservation funds and transfer them by check to Christina, who in turn endorsed the funds over to the Debtor, with the ostensible aim of creating an informal prejudgment attachment in favor of Christina. The Defendants were informed by Attorney Carrozzella that the funds on deposit would earn interest at a rate of five percent (5%) "tax-free". George's testimony

1. By Order dated December 24, 1997, George Radulesco, in his capacity as administrator-in-fact for the estate of Christina Radulesco, was substituted as Defendant in this proceeding for Christina Radulesco.

made plain, though, that the rate of return was not a material factor in the Defendants' decision to place funds with the Debtor; rather, they were motivated primarily by estate planning concerns.[2]

When Christina received a final judicial award of $127,600.00 against her husband in or about April, 1995, George transferred an additional $17,600.00 to the Debtor[3] from his father's funds, so as to satisfy the award in favor of Christina (the initial deposit of $110,000.00 and the additional deposit of $17,600.00 are hereafter collectively referred to as the "Deposited Funds"). Thereafter, the Defendants left the Deposited Funds "on deposit" with the Debtor, although they periodically tapped those funds for Christina's ongoing care. The Plaintiff's expert witness, Richard Finkel, CPA—a forensic accountant—testified credibly that a separate bank account had not been established for the Deposited Funds. Indeed, Mr. Finkel described the banking structure of the Debtor as "one big pot", into which was deposited all manner of receipts by, and revenue of, the Debtor. Thus the Debtor commingled the Deposited Funds in a bank account (hereafter, the "Commingled Account") with, *inter alia*, (i) deposited funds of other entities, (ii) income derived from investments, and (iii) the general revenue of the legal practice of the Debtor.

At all times relevant to this adversary proceeding the Debtor was involved, through the fraudulent activity of Attorney Carrozzella, in a criminal enterprise possessing many of the attributes of a "Ponzi" scheme—in which funds placed with a debtor by later depositors, such as the Defendants here, are secretly and illicitly utilized to pay returns and repay principal to earlier depositors.

As noted above, the Defendants periodically drew down portions of the Deposited Funds for the care of Christina. Among those withdrawals was a transaction in early June 1995, in which the Defendants requested and received $5,600.00 in the form of two checks—Check No. 7023 ($1,700.00) and Check No. 7024 ($3,900.00)—dated June 6, 1995, drawn on the "Carrozzella and Richardson Clients Fund Account", and made payable to the order of "Cristina[4] Radulesco" (hereafter, the "Transfers"). The Debtor's records indicate that after the Transfers, Christina continued to maintain an "account" with the Debtor in an amount not less than $110,000.00. Those funds have never been paid to Christina or her estate.

## IV. DISCUSSION

The Plaintiff–Trustee seeks to avoid the Transfers under the authority of Bankruptcy Code Section 547, which provides in relevant part as follows:

\*     \*     \*     \*     \*     \*

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of *an interest of the debtor in property-*

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

---

**2.** Although George was unable to state with specificity the nature of the estate planning achieved by the placement of funds with the Debtor, this Court does not doubt the sincerity of his belief that it would serve such a purpose.

**3.** Presumably, this later deposit, like the initial deposit, was placed through the conduit of Christina, although the instrument effect-

ing the later deposit was not introduced into evidence at trial.

**4.** The Court recognizes that the spelling of this name is different from that utilized by the Trustee in his Complaint. The Court finds the Defendant "Christina" Radulesco and the payee "Cristina" Radulesco to be the same person.

(A) on or within 90 days before the date of the filing of the petition; . . . and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title. . . .

11 U.S.C. § 547(b) (1995) (emphasis supplied).

■ The Plaintiff bears the burden of proof by a preponderance of the evidence on all of the elements of a preferential transfer. *See* 11 U.S.C. § 547(g). He has satisfied that burden insofar as the elements stated in subsections (1)—(5) of Code Section 547(b). As revealed in the Factual Background of this Memorandum of Decision, the Transfers were made within the ninety (90) days prior to the Petition Date, at a time when, as the parties have stipulated, the Debtor was insolvent. The Court concludes that at all relevant times Christina was a "creditor" of the Debtor, in that she had a "right to payment" of the Deposited Funds. *See* 11 U.S.C. § 101(5), (10) (1995). The Court further concludes that the Debtor was liable for the repayment of such funds, and therefore, that the Transfers were made on account of an antecedent "debt". *See* 11 U.S.C. § 101(12) (1995). Finally, the Transfers enabled Christina to receive more than she would receive in a hypothetical liquidation of the Debtor under Chapter 7 of the Bankruptcy Code had the Transfers not been made.

■ Nonetheless, the Plaintiff has failed to establish by a preponderance of the evidence that the Transfers consisted of an "interest of the debtor in property", as required by the prefatory language of Section 547(b). As detailed herein, the Court concurs with the Defendants' argument that the Transfers did not consist of the Debtor's property because the funds transferred were previously placed with, and held by, the Debtor in trust for the Defendants' benefit.

■ It is axiomatic that funds held in trust by one entity for another do not constitute the beneficial property of the former. Rather, title to the trust property is held by the former *as trustee* for the benefit of the latter.[5] Consequently, property transferred by a trustee to its beneficiary pursuant to, or consistent with, the trust is not voidable as a preferential transfer should the trustee later become a bankruptcy debtor. Thus, a court must first determine whether the course of conduct between a trust "settlor" and her intended trustee created a trust relationship with respect to the subject property.

## A. Creation of an Express Trust.

■ An individual settlor can declare an express trust by making an *inter vivos* transfer of property to a trustee and "manifesting" an intention to create a trust. *See* Restatement (Second) of Trusts §§ 2, 23 (1959); *cf. Marzahl v. Colonial Bank & Trust Co.*, 170 Conn. 62, 64, 364 A.2d 173 (1976); *Goytizolo v. Moore*, 27 Conn.App. 22, 25, 604 A.2d 362 (1992). A trust may be created even though the settlor does not use the word "trust". Restatement (Second) of Trusts § 24 cmt. b (1959). And although the intention of the settlor must be "externally expressed", *id.* at § 24 cmt. c, it need not be evidenced by words, whether written or spoken. Rather, it may be discerned solely from the conduct of the settlor in light of all the circumstances. *Id.* at §§ 4 cmt. a, 24(1). In litigation such as that at bar, all circum-

---

5. A trust has been generally described as "a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person. . . ." Restatement (Second) of Trusts § 2 (1959).

stances throwing light upon a settlor's intention are relevant to the interpretation of her words and/or conduct. *See id.* at § 24 cmt. b.

Once a settlor has tendered the subject property to the intended trustee and manifested an intention to create a trust, the intended trustee then accepts or disclaims the trust. Whether the intended trustee accepts or disclaims depends upon a manifestation of his intention. *Id.* at § 102 cmt. c. No particular formality is necessary to constitute an acceptance, *id.* at § 102 cmt. b; indeed, it is a question of fact in each case whether the intended trustee has manifested an intention to accept or disclaim. *Id.* at § 102 cmt. c.

The Court concludes from the entire evidentiary record of this proceeding, and in particular, from George's credible testimony, that an express trust was created when the Defendants placed the Deposited Funds with the Debtor under the specific—and somewhat unusual—circumstances of this case.

In analyzing the circumstances surrounding the Defendants' placement of funds with the Debtor, the Court begins with two critical and connected observations: the Defendants had an attorney-client relationship with Attorney Carrozzella, and the Deposited Funds were the subject of his legal services on their behalf. In that context it would be reasonable for the Defendants to expect the Debtor to hold the Deposited Funds in trust since, as a general rule, whenever an attorney receives property from a client, he holds it in trust. *See* Conn. R. Prof. Conduct 1.15(a).

Against the confidential and representational background present in this case, George's testimony credibly established that the Defendants manifested an intention to deposit funds into a *trust* account to be maintained by the Debtor in a fiduciary capacity. The evidence—both documenta-

ry and testimonial—also demonstrated that the Debtor manifested an intention to accept the role of trustee for the Deposited Funds. For instance, (i) the Debtor's computerized accounting for the Deposited Funds was titled "Client *Trust* Ledger" (emphasis supplied) and (ii) the very Transfers presently at issue were made by checks drawn on a *"Clients Fund* Account" (emphasis supplied).[6] The use of such instruments and accounting devices is at least ostensibly consistent with the fiduciary requirements imposed upon Connecticut attorneys when handling the monetary property of their clients. *See, e.g.,* Conn. Sup.Ct. R. §§ 2–27(a), (b), 2–28(b); Conn. R. Prof. Conduct 1.15. Thus, there can be little doubt that through his words and conduct Attorney Carrozzella sought to leave these Defendants with the impression that the Deposited Funds had been received, and were being maintained, in trust for their benefit.

### B. Maintenance and Continuity of the Trust.

Having determined that the *Deposited Funds* constituted a trust res in the possession of the Debtor at the time they were placed there by the Defendants, the Court now turns to the question of whether that trust was maintained sufficiently, so as to regard the *Transfers* as consisting of trust funds as well.

In general, when an alleged express trust beneficiary seeks to recover the trust res he must demonstrate not only that he established an express trust initially, but also that the subject res has been maintained in trust. And where the trust res is alleged to have been converted to some product or proceeds, he must follow the trust res through to the target property. In other words, the beneficiary must *trace* the trust res to demonstrate that it is still subject to the trust and has not been lost or become subject to any superior

---

6. Acts of a trustee occurring subsequent to a manifestation of an intent can be relevant to a court's determination of whether an intended trustee accepted or disclaimed a trust. *See* Restatement (Second) of Trusts § 2 (1959).

rights of a third party. *See* Restatement (Second) of Trusts § 202 cmt. b (1959). This is the general rule, satisfaction of which becomes more difficult when, as in the instant proceeding, the trust res is a fungible item—such as money—which has been commingled with the identical property of others.[7]

■ Arguably then, the Defendants here bear a burden of proving, in the context and parlance of the present litigation, that the *Deposited Funds* can be traced through the Commingled Account into the *Transfers*. However, the unique posture of preference litigation relieves them of that burden. The Defendants here do not ask this Court to recognize their beneficial rights in property *for the purpose of recovering such property* from the bankruptcy estate. ·Rather, they seek retroactive recognition of those rights as a *defense* to the Plaintiff's attempt to avoid the completed transfer of such property to them. In other words, the Defendants are using their claim of an express trust as a *shield* rather than as a *sword.* In that context it is not necessary for the Defendants to trace the Deposited Funds because, in essence, by making the Transfers, the Debtor traced the funds for the Defendants. There is logically no need to trace when one is in receipt of property identified and acknowledged by a trustee as trust property.

It is beyond question that the Debtor failed to respect the proper boundaries of the trust accounts under its care. Through Attorney Carrozzella the Debtor improperly commingled and fraudulently utilized funds entrusted to it as a fiduciary. Nonetheless, nothing about the illicit commingling and diversion of such trust funds should negate or undermine the effect of the Debtor's all too rare *lawful and proper* actions respecting the sanctity of those funds. Those lawful and proper actions included the payment of such funds on demand to trust beneficiaries such as the Defendants here. By making the Transfers, the Debtor simply acted consistently with the express trust over which it was trustee.

## C. Equitable Considerations.

The Plaintiff suggests that equitable principles should guide this Court to avoid the Transfers, so as to achieve a distributional "equality" among innocent victims of the Debtor's fraud. This Court is indeed mindful of the counsel of the United States Supreme Court in *Cunningham v. Brown,* 265 U.S. 1, 44 S.Ct. 424, 68 L.Ed. 873 (1924), that the ·circumstances of that case—involving the avoidance of preferential transfers arising in the original "Ponzi" scheme—"call[ed] strongly for the principle that equality is equity, and that is the spirit of the bankrupt law." *Id.,* 265 U.S. at 13, 44 S.Ct. 424. Nonetheless, that authority is inapposite here since *Cunningham* involved an initial *loaning* of money to a debtor, not an *entrusting* of funds to the *fiduciary care* of a debtor, as existed in the case of these Defendants. When individuals are paid funds in which they already hold a beneficial interest, no equitable principles are implicated.

## D. Additional Defenses.

Given the Court's favorable entertainment of the Defendants' express trust defense to the Plaintiff's Complaint, it is not necessary for the Court to address the Defendants' constructive trust arguments

---

7. Commingling—standing alone—does not necessarily undermine a beneficiary's rights to specific property. The Court notes that, as a practical matter, the commingling of trust funds occurs on a regular basis when attorneys create and maintain an IOLTA clients' funds account, as required by law. *See* Conn. R. Prof. Conduct 1.15(d); *see also,* Conn. Sup. Ct. R. § 2–28(c). The client trust funds of multiple clients are commingled within such an account, but one could not argue in good faith that the trust character of such funds is destroyed by such commingling. *Cf. Phillips v. Washington Legal Foundation,* 524 U.S. 156, ——, 118 S.Ct. 1925, 1930 (1998) (construing Texas law).

or the existence of statutory defenses under Section 547(c).[8]

## V. CONCLUSION

For the foregoing reasons, judgment shall enter in favor of the Defendants. This Memorandum of Decision shall constitute the Court's findings of fact and conclusions of law for the purposes of Fed. R. Bank. P. 7052.

---

**8.** The constructive trust and "ordinary course" defenses are discussed by this Court in a Memorandum of Decision in a companion case, *Daly v. Biafore,* Adv. Pro. No. 97–3017.