In re CARROZZELLA
& RICHARDSON,
Debtor.

Michael J. Daly, Trustee, Plaintiff,

v.

Mary Lou Crandall, Defendant.

Michael J. Daly, Trustee, Plaintiff,

v.

Esther Susie, Defendant.

Michael J. Daly, Trustee, Plaintiff,

v.

Robert Parisi, Defendant.

Michael J. Daly, Trustee, Plaintiff,

v.

Warren P. Corriveau, Defendant.

Michael J. Daly, Trustee, Plaintiff,

v.

Robert Mule, Defendant.

Bankruptcy No. 95–31231.
Adversary Nos. 97–3015, 97–3020,
97–3021, 97–3024, 97–3007.

United States Bankruptcy Court,
D. Connecticut.

Feb. 28, 2001.

Douglas S. Skalka, Esq., Neubert, Pepe & Monteith, P.C., New Haven, Connecticut, for Movant.

Robert G. Wetmore, Esq., Robert G. Wetmore P.C., Yalesville, Connecticut, for Respondents.

## CONSOLIDATED MEMORANDUM OF DECISION ON COMPLAINTS TO AVOID PREFERENTIAL TRANSFERS

ALBERT S. DABROWSKI, Bankruptcy Judge.

### I. BACKGROUND

Before the Court are the five captioned adversary proceedings commenced by the Plaintiff-Trustee against Defendants who received funds from the Debtor within the

preferential transfer "look-back window" of Bankruptcy Code Section 547(b)(4). The present Defendants, like scores of other individuals over a period spanning two decades, entrusted significant personal funds to the Debtor's care. Due to gross mismanagement and misappropriation by its principals, the Debtor ended up hopelessly insolvent and in liquidation in this Court. In an effort to create some measure of distributional equality among innocent fraud victims, the Plaintiff–Trustee commenced, *inter alia*, a series of avoidance actions pursuant to Section 547(b)(4) to recover funds from individuals, such as the present Defendants, who received money from the Debtor within ninety days prior to the filing of the Bankruptcy petition.

Judgments have entered in this Court on several related preferential transfer actions; many other such proceedings, like the ones presently at bar, are not yet final. On August 18, 1999, the Court issued decisions in two of the tried preference actions.[1] In *Daly v. Biafore (In re Carrozzella & Richardson)*, 237 B.R. 536 (Bankr. D.Conn.1999), judgment was rendered for the Plaintiff–Trustee, but in *Daly v. Radulesco (In re Carrozzella & Richardson)*, 237 B.R. 544 (Bankr.D.Conn.1999), judg-

ment was entered for the defendants. The Court, as reflected in those companion decisions, crafted a distinction in outcome between defendants who used the Debtor as a contractual depository similar to a bank[2] and those who entrusted funds with the Debtor under circumstances constituting and creating a fiduciary relationship.[3] The Court expected that *Biafore* and *Radulesco* would serve as "channel markers." to guide and encourage the Trustee and the numerous defendants toward fair and equitable settlements in the remaining proceedings, including those presently at bar.

In *Biafore* final judgment stood without appeal, but in *Radulesco* the Plaintiff–Trustee prosecuted an appeal to the Bankruptcy Appellate Panel Service of the Second Circuit[4] (hereafter, the "BAP"). On April 21, 2000, a three-judge panel of the BAP reversed this Court's decision and directed that judgment enter for the Plaintiff (hereafter, the "BAP Opinion").[5]

On June 9, 2000, following, and in view of, the BAP Opinion, the Plaintiff filed new Motions for Summary Judgment.[6] On October 2, 2000, the new Motions for Summary Judgment were denied and trial was set for December 4, 2000. *Daly v. Deptula, (In re Carrozzella & Richardson)*, 255

---

1. On that same date the Court issued Orders denying Plaintiff's Motions for Summary Judgment in each of these cases.

2. For example, the defendant in *Biafore* was a "sophisticated businessperson" who sought out the Debtor for investment of money. He "knew, or should have known, that the funds he placed with the Debtor were uninsured...." Yet "[w]ith eyes wide open, and in pursuit of a higher rate of return on idle funds... [he] forewent the relative security of an insured account with a banking institution." *Biafore*, 237 B.R. at 541.

3. For example, the primary defendant in *Radulesco* was "a person of advanced age and limited English language skills", who trusted and retained Attorney Carrozzella to recover delinquent support payments, and then left those proceeds in the care of the Debtor law firm upon the advice of Attorney Carrozzella. *Radulesco*, 237 B.R. at 546.

4. Bankruptcy Appellate Panel Service within the Second Circuit commenced on July 1, 1996, but was terminated by Order of the Judicial Council of the Second Circuit on June 30, 2000.

5. 247 B.R. 595 (2d Cir. BAP 2000) (the BAP Opinion disagreed with this Court's conclusion, *inter alia*, that in the context of preference litigation defendants should not bear the burden of "tracing" the funds which are the subject of both the trustee's avoidance action and defendants' "trust fund" defense).

6. The Plaintiff assumed that the BAP Opinion stood as binding precedent on this Court as to critical issues of law, and argued that there was no genuine issue as to any fact material to that law. This Court, in denying the new Summary Judgment Motions, determined BAP opinions to be *persuasive*, but *not binding*, precedent.

B.R. 267 (Bankr.D.Conn.2000) (hereafter, the "Summary Judgment Opinion"). On October 12, 2000, the Plaintiff filed Notices of Appeal as to the Summary Judgment Opinion.

Neither party, however, appeared for trial on December 4, 2000, and the Court ordered that a status conference be held on December 13, 2000. Following said Status Conference, the Court entered Orders which each determined that: (i) the Plaintiff filed a Notice of Appeal from an *interlocutory* Order; (ii) the Plaintiff did not file a motion for leave to appeal an Interlocutory Order pursuant to Fed. R. Bank. P. 8003; (iii) the United States District Court had not granted Plaintiff leave to appeal; (iv) no stay was applicable to further trial proceedings in this Court; (v) the ends of justice would best be served if evidence in the subject proceedings was adduced expeditiously; and (vi) following trial a *final* judgment, would be appealable of *right*. Finally, the Order rescheduled combined trials for January 29, 2001. On January 5, 2001, United States District Judge Janet Bond Arterton dismissed the Summary Judgment appeals without prejudice. The proceedings at bar were collectively tried before this Court, largely on a stipulated record, on February 1, 2001.[7]

## II.  JURISDICTION

The United States District Court for the District of Connecticut has subject matter jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this proceeding on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1). These are "core proceedings" pursuant to 28 U.S.C. §§ 157(b)(2)(F).

## III.  FACTUAL BACKGROUND

The Court's findings of fact are derived from the following sources: (i) the parties' "Stipulation to Facts and the Admissibility of Documents as Full Exhibits" filed in each case, (ii) the record at trial,[8] and (iii) the Court's independent examination of the official record of the instant case and adversary proceeding.

At all times relevant to these adversary proceedings the Debtor was insolvent and involved, principally through the fraudulent activity of Attorney John A. Carrozzella,[9] in a criminal enterprise possessing the attributes of a "Ponzi" scheme—in which funds placed with a debtor (hereafter, "Deposited Funds") by later depositors are secretly and illicitly utilized to pay returns and repay principal to earlier depositors. The Debtor commingled the Deposited Funds of the present Defendants in a bank account (hereafter, the "Commingled Account") with, *inter alia,* (i) deposited funds of other entities, (ii) income derived from investments, and (iii) the general revenue of the legal practice of the Debtor. The banking*financial structure of the Debtor was basically "one big pot", into which was deposited all manner of receipts by, and revenue of, the Debtor.

The Defendants are all individuals who had deposited funds with the Debtor. The relevant withdrawals of those Deposited Funds all occurred within ninety days of the July 19, 1995 Petition Date of the instant bankruptcy case. Specifically, the *Stipulations* establish fund withdrawals (hereafter, the "Transfers") as follows:

---

7. The January 29, 2001 trial date was rescheduled to February 1, 2001 at the request of the parties.

8. The trials related to Defendants Crandall, Mule and Susie were on a fully stipulated basis. Parisi and Corriveau were submitted on stipulated facts supplemented by the February 1, 2001 testimony of Robert Parisi and Earnest Corriveau (Warren Corriveau's father). A sixth case, *Daly v. Deptula,* the sub-

ject of a separate future Memorandum of Decision, was simultaneously submitted on a fully stipulated basis.

9. Attorney Carrozzella, who plead guilty to related charges prosecuted in the United States District Court for the District of Connecticut, was sentenced to prison and is now deceased.

| Defendant | Date (1995) | Amount |
|---|---|---|
| Crandall | June 1 | $ 6,000.00 |
| Susie | April 26 | $ 3,870.00 |
| | April 26 | 40,920.00 |
| | May 6 | 2,000.00 |
| | | $46,790.00 [10] |
| Parisi | April 19 | $ 775.00 |
| | May 19 | 775.00 |
| | June 23 | 1,097.30 |
| | June 7 | 60,000.00 [11] |
| | | $62,647.30 |
| Corriveau | June 7 | $39,000.00 [12] |
| Mule | May 23 | $ 2,000.00 |

None of the present Defendants, had a *relevant* attorney-client relationship with Carrozzella,[13] and none of the Deposited Funds were derived from, or were the product of, legal services by Carrozzella or his firm on their behalf.[14] All of the present Defendants simply used the Debtor as an investment vehicle much like a bank, depositing, keeping on deposit, and periodically withdrawing funds for personal reasons. Simply stated, and as was stipulated in each case, "[each] Defendant was an investor in the Debtor's Ponzi scheme." *See Stipulations* at ¶ 13.

10. The $2,000.00 Transfer was by check to the Defendant. However, the $3,870.00 and $40,920.00 transfers were by checks payable to JLW Properties and Donald and Pearlette Graf, respectively. The evidence established, *inter alia*, that "the Defendant [Susie] received" the JLW Properties and Graf checks "for [her] benefit" as "an investor" and that the checks were drawn against her "outstanding balance due from the debtor." *See Susie Stipulation* at ¶¶ 13–16. On that record the Court concludes that the total $46,790.00 transfer was made "on behalf of" the Defendant. *See also* Bankruptcy Code Section 550(a)(1)(permitting recovery of avoided preferential transfers from the "entity for whose benefit such transfer was made . . . .")

11. This Transfer was a component of a $99,000.00 Transfer by check payable to "Patricia Curtin, Trustee", an attorney for People's Bank, and was used to purchase a mortgage on real property from People's Bank. Of the $99,000.00, $60,000.00 was paid at the direction of Parisi and $39,000.00 was paid at

## IV. DISCUSSION

The Plaintiff–Trustee seeks to avoid the Transfers under the authority of Bankruptcy Code Section 547, which provides in relevant part as follows:

&ast; &ast; &ast; &ast; &ast; &ast;

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property-

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; . . . and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

the direction of Corriveau. *See Parisi and Corriveau Stipulations* at ¶ 14.

12. *See* footnote 11.

13. Defendants Parisi and Corriveau had apparently used Carrozzella or the law firm in matters unrelated to the funding source for the Deposited Funds. For example, Parisi testified that Carrozzella represented him in two minor unrelated cases including a speeding ticket. It was also alleged that "[b]oth Corriveau and Parisi, and members of their family, had used Carrozzella in real estate transactions for over 30 years." *See* Corriveau's *Brief . . . in Opposition to Motion for Summary Judgment*, Doc. I.D. No. 33.

14. In the case of Parisi, the source of approximately $66,000.00 of the Deposited Funds was a settlement following an automobile accident. However, as Parisi testified, Attorney Carrozzella did not represent him in that matter.

(C) such creditor received payment of such debt to the extent provided by the provisions of this title . . . .

11 U.S.C. § 547(b) (1995).

The Plaintiff bears the ultimate burden of proof by a preponderance of the evidence on all of the elements of a preferential transfer. *See* 11 U.S.C. § 547(g) (1995). It is beyond contest that the Plaintiff has met that burden as to the elements of Subsections 547(b)(1)-(5).[15] As noted in the Factual Background section of this Memorandum of Decision, the Transfers were made from the Debtor's account to or for the benefit of the Defendants within the ninety (90) days prior to the Petition Date, at a time when, as the parties have stipulated, the Debtor was insolvent. The Court concludes that at all relevant times the Defendants were "creditors" of the Debtor, in that they had a "right to payment" of their Deposited Funds. *See* 11 U.S.C. § 101(5), (10) (1995). The Court further concludes that the Debtor was liable for the repayment of such funds, and therefore, the Transfers were made on account of antecedent "debts." *See* 11 U.S.C. § 101(12) (1995). Further, the Transfers enabled the Defendants to receive more than they would receive in a hypothetical liquidation of the Debtor under Chapter 7 had the Transfers not been made.

Finally, notwithstanding the credible trial testimony of Robert Parisi that, *inter alia*, he "entrusted money" to the Debtor, and what the Court presumes is the similar conviction of each Defendant herein, the Court concludes that the course of conduct between the Debtor and each Defendant did not create a trust relationship—expressly or by operation of law—with respect to the Deposited Funds. The Trustee has established that the funds constituting the Transfers were "an interest of the debtor in property", as required by the prefatory language of Subsection 547(b).

To the extent that any Defendant herein has asserted or otherwise engaged a constructive trust theory, or argues that (s)he qualifies for an exception to a bankruptcy trustee's avoiding powers under the terms of Section 547(c)(2) ("ordinary course" defense), the Court's analysis in *Biafore* applied to these similar facts is fatal to the claim.

## V. CONCLUSION

For the foregoing reasons, judgment shall enter in favor of the Plaintiff in each of these adversary proceedings. This Memorandum of Decision shall constitute the Court's findings of fact and conclusions of law for the purposes of Fed. R. Bank. P. 7052.

---

**15.** Indeed, counsel for the Defendants concedes by Stipulation, and in argument, that most of the preferential transfer elements have been satisfied, that *Biafore* resolves adversely to the Defendants questions of law as to these elements, and special defenses raised, but argues that *Radulesco* provides sufficient flexibility for favorable determinations in the present proceedings.