## In re CARROZZELLA & RICHARDSON, Debtor.

### Michael J. Daly, Trustee, Plaintiff,

v.

### Frank Biafore, Defendant.

**Bankruptcy No. 95–31231.**
**Adversary No. 97–3017.**

United States Bankruptcy Court,
D. Connecticut.

Aug. 18, 1999.

---

Douglas S. Skalka, Neubert, Pepe & Monteith, P.C., New Haven, CT, for Plaintiff–Trustee.

Robert G. Wetmore, Robert G. Wetmore P.C., Wallingford, CT, for Defendant.

### MEMORANDUM OF DECISION ON COMPLAINT TO AVOID PREFERENTIAL TRANSFERS

ALBERT S. DABROWSKI, Bankruptcy Judge.

### I. INTRODUCTION

This adversary proceeding follows in the tragic wake of a pattern of fraud perpetrated by the Debtor's principals. Due to gross mismanagement and misappropriation of funds by its principals, the Debtor has ended up hopelessly insolvent and in liquidation in this Court. The present Defendant, like scores of other individuals over a period spanning two decades, placed significant personal funds in the Debtor's care. In an effort to create some measure of distributional equality among innocent fraud victims, the Plaintiff–Trustee has commenced, *inter alia,* a series of avoidance actions against individuals, such as the present Defendant, who withdrew funds from the Debtor within the preferential transfer "look-back window" of Bankruptcy Code Section 547(b)(4).

As detailed in this Memorandum of Decision, the unique facts underlying this adversary proceeding support the Trustee's avoidance and recovery of funds transferred to the Defendant within the preference "window".

### II. JURISDICTION

The United States District Court for the District of Connecticut has subject matter jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this proceeding on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(F).

### III. FACTUAL BACKGROUND

This proceeding is before the Court for decision after trial. The Court's findings of fact are derived from the following sources: (i) the parties' "Stipulation to Facts and the Admissibility of Documents as Full Exhibits", (ii) the evidentiary record at trial, and (iii) the Court's independent examination of the official record of the instant case and adversary proceeding.

On July 19, 1995 (hereafter, the "Petition Date"), an involuntary petition (hereafter, the "Petition") was filed in this Court against the Debtor, Carrozzella & Richardson, seeking relief under Chapter 7 of the Bankruptcy Code. On August 21, 1995, an Order for Relief entered upon the Petition, and thereafter the Plaintiff, Michael J. Daly was appointed as trustee of the Debtor's Chapter 7 bankruptcy estate.

The Defendant, Frank Biafore, was one of many individuals who from time to time placed personal funds with the Debtor. The Defendant began his depository relationship with the Debtor in or about 1989, through contact with one of its general

partners—Attorney John A. Carrozzella (hereafter, "Attorney Carrozzella"). It is not clear from the record whether the Defendant previously had an attorney-client relationship with Attorney Carrozzella, although it is apparent that none of the funds deposited with the Debtor were the subject of any legal representation of the Defendant by Attorney Carrozzella. The Defendant testified that "it was common knowledge that [Attorney Carrozzella] was holding ... money for people, giv[ing] them a very good interest rate, and you could get your money any time you needed it." Tr. at 100.

At all times relevant to this adversary proceeding, the Defendant was engaged in the business of real estate development, and was a principal in at least three business entities. In connection with his business activities, the Defendant received substantial lump-sum payments from third parties, part of which would then be utilized to pay business expenses, *but only as those expenses arose over time*. As a result, large sums of the Defendant's money would sit idle for indeterminate periods of time. Attorney Carrozzella initially offered to pay the Defendant twelve percent (12%) per annum[1], compounded monthly, on funds deposited with the Debtor, which funds could be withdrawn on notice of 24 hours or less. This arrangement was highly attractive to the Defendant, for it permitted idle funds to earn a high rate of interest, without any material illiquidity. He found the arrangement superior to traditional banking because, as he explained it, (i) a bank money market account, while liquid, did not pay a high rate of interest, and (ii) a bank certificate of deposit—while paying a slightly higher interest rate than a money market account—was liquid only with substantial penalty.

For more than five years the Defendant deposited with and withdrew from the Debtor hundreds of thousands of dollars through scores of separate transactions (deposits hereafter collectively referred to as the "Deposited Funds"). In his own words, he used the Debtor "as a bank." Tr. at 94. Within the ninety (90) days preceding the Petition Date withdrawals were processed from the Defendant's "account" with the Debtor via the following transactions: (i) Check No. 830, in the amount of $5,000.00, dated May 10, 1995, drawn on the "Carrozzella and Richardson Clients Fund Account", and made payable to the order of "Whitney Associates"; and (ii) Check No. 7064, in the amount of $10,000.00, dated June 16, 1995, drawn on the "Carrozzella and Richardson Clients Fund Account", and made payable to the order of "Frank Biafore" (hereafter collectively referred to as the "Transfers"). The Debtor's records indicate that after the Transfers, the Defendant continued to maintain an "account" with the Debtor in an amount not less than $85,000.00. Those funds have never been paid to the Defendant.

At a point in time not determined in this proceeding, the Debtor became involved, through the fraudulent activity of Attorney Carrozzella, in a criminal enterprise possessing many of the attributes of a "Ponzi" scheme—in which funds placed with a debtor by later depositors are secretly and illicitly utilized to pay returns, and repay principal, to earlier depositors. At all times relevant to this adversary proceeding, the Debtor commingled the Deposited Funds in a single bank account together with, *inter alia*, (i) funds deposited with the Debtor by other entities, (ii) income derived from investments, and (iii) the general revenue of the legal practice of the Debtor.[2]

---

1. On February 5, 1992 and January 13, 1993, Attorney Carrozzella unilaterally reduced this interest rate to 10% and 8% respectively.

2. The Plaintiff's expert witness, Richard Finkel, CPA—a forensic accountant—testified

credibly that separate bank accounts were not established for funds placed with the Debtor by individual depositors. Indeed, Mr. Finkel described the banking structure of the Debtor as "one big pot", into which was deposited all of the Debtor's receipts and revenue.

## IV. DISCUSSION

The Plaintiff–Trustee seeks to avoid the Transfers under the authority of Bankruptcy Code Section 547, which provides in relevant part as follows:

\* \* \* \*

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of *an interest of the debtor in property*—

 (1) to or for the benefit of a creditor;

 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

 (3) made while the debtor was insolvent;

 (4) made—

 (A) on or within 90 days before the date of the filing of the petition; . . . and

 (5) that enables such creditor to receive more than such creditor would receive if—

 (A) the case were a case under chapter 7 of this title;

 (B) the transfer had not been made; and

 (C) such creditor received payment of such debt to the extent provided by the provisions of this title. . . .

11 U.S.C. § 547(b) (1995) (emphasis supplied).

█ The Plaintiff bears the ultimate burden of proof by a preponderance of the evidence on all of the elements of a preferential transfer. *See* 11 U.S.C. § 547(g) (1995). It is beyond contest that the Plaintiff has met that burden as to the elements of Subsections 547(b)(1)-(5). As noted in the Factual Background of this Memorandum of Decision, the Transfers were made from the Debtor's bank account to or for the benefit of the Defendant[3] within the ninety (90) days prior to the Petition Date, at a time when, as the parties have stipulated, the Debtor was insolvent. The Court concludes that at all relevant times the Defendant was a "creditor" of the Debtor, in that he had a "right to payment" of his Account Balance. *See* 11 U.S.C. § 101(5), (10) (1995). The Court further concludes that the Debtor was liable for the repayment of such funds, and therefore, the Transfers were made on account of an antecedent "debt". *See* 11 U.S.C. § 101(12) (1995). Finally, the Transfers enabled the Defendant to receive more than he would receive in a hypothetical liquidation of the Debtor under Chapter 7 had the Transfers not been made. Nonetheless, the Defendant argues that the Transfers did not consist of "an interest of the debtor in property", as required by the prefatory language of Subsection 547(b), because the funds transferred were previously placed with and/or held by the Debtor *in trust* for the Defendant's benefit.

█ It is axiomatic that funds held in trust by one entity for another do not constitute the beneficial property of the former. Rather, title to the trust property is held by the former as *trustee* for the benefit of the latter.[4] Consequently, property transferred by a trustee to its beneficiary pursuant to, or consistent with, a trust is not voidable as a preferential transfer should the trustee later become a

---

**3.** The evidence established that Whitney Associates was a business entity of the Defendant, and that he directed payment to that entity from his account with the Debtor. Tr. at 97. On that record the Court concludes that the $5000.00 transfer to Whitney Associates was made "on behalf of" the Defendant. Bankruptcy Code Section 550(a)(1) permits the Plaintiff–Trustee to recovery avoided preferential transfers from the "entity for whose benefit such transfer was made . . . ."

**4.** A trust is generally described as "a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person. . . ." Restatement (Second) of Trusts § 2 (1959).

bankruptcy debtor.[5] Thus, this Court must determine whether the course of conduct between a debtor and the alleged preference recipient created a trust relationship—expressly or by operation of law—with respect to the subject property. The inquiry ultimately asks whether the funds comprising the Transfers were trust funds at the time of their transfer from the Debtor to the Defendant.

## A. Creation of an Express Trust.

 An individual "settlor" can declare an express trust by making an *inter vivos* transfer of property to a "trustee" and "manifesting" an intention to create a trust. *See* Restatement (Second) of Trusts §§ 2, 23 (1959); *cf. Marzahl v. Colonial Bank & Trust Co.*, 170 Conn. 62, 64, 364 A.2d 173 (1976); *Goytizolo v. Moore*, 27 Conn.App. 22, 25, 604 A.2d 362 (1992). A trust may be created even though the settlor does not use the word "trust". Restatement (Second) of Trusts § 24 cmt. b (1959). And although the intention of the settlor must be "externally expressed", *id.* at § 24 cmt. c, it need not be evidenced by words, whether written or spoken. Rather, it may be discerned solely from the conduct of the settlor in light of all the circumstances. *Id.* at §§ 4 cmt. a, 24(1). In litigation such as that at bar, all circumstances throwing light upon a settlor's intention are relevant to the interpretation of her words and/or conduct. *See id.* at § 24 cmt. b.

 The Court concludes from the entire evidentiary record of this proceeding, and in particular, from the testimony of the Defendant, that he manifested no intention to create an express trust when he placed funds with the Debtor. In analyzing the circumstances surrounding the Defendant's placement of funds with the Debtor, the Court makes the following observations. First, the Defendant never stated, orally or in writing, that he intended to create a trust when he placed funds with the Debtor. Nor is there conduct or circumstantial background from which the Court might infer that the Defendant intended to create, or assumed he was creating, a trust. Finally, there is no evidence that the Defendant ever had an attorney-client relationship with Attorney Carrozzella. Even assuming that he did, the Deposited Funds were never held by the Debtor as the proceeds, product, or subject of any of its legal work.[6]

 What the evidence demonstrates is not the creation of a *trust* relationship, but rather, a type of *banking* relationship. By his own admission, the Defendant used the Debtor "as a bank". A deposit account with a banking institution does not generally create a trust relationship unless it is explicitly denominated as such. *See e.g.,* 10 Am.Jur.2d *Banks* § 339 (1963). Rather, a deposit creates a *debt* owed by the bank to the depositor. *Id.* It is the potential insecurity of this non-trust arrangement which has spawned much present-day banking regulation, including the provision of deposit insurance through entities such as the Federal Deposit Insurance Corporation. The Defendant is and was a sophisticated businessperson, who knew, or should have known, that the funds he placed with the Debtor were uninsured. With eyes wide open, and in pursuit of a higher rate of return on idle funds, the Defendant forewent the relative security of an insured account with a banking institution.

## B. Implication of a Constructive Trust

 Failing to establish the creation of an *express* trust relationship at the time the Deposited Funds were placed with the Debtor, the Defendant attempts to have

---

5. *See, e.g., Daly v. Radulesco,* Adv. Pro. No. 97–3010, a companion case to this one.

6. Consequently, the Defendant's express trust argument cannot be aided by Connecticut Rule of Professional Conduct 1.15(a), which establishes the general rule that whenever an attorney receives property from a *client,* he holds it in trust.

this Court retroactively imply a *constructive* trust in the Deposited Funds based upon the Debtor's alleged fraud in the solicitation of those funds. This alternative tact possesses a solid legal basis in this Circuit. *See Sanyo Electric, Inc. v. Howard's Appliance Corp. (In re Howard's Appliance Corp.),* 874 F.2d 88 (2d Cir.1989) (recognizing the existence of a constructive trust under New Jersey law, and applying that trust retroactively to exclude from a bankruptcy estate property in which a creditor's security interest had been lost through the pre-petition misconduct of the debtor).[7] Whether the grounds for a constructive trust existed at the time the Deposited Funds were placed with the Debtor, however, is purely a matter of state law. *Id.*

■ The implication of a constructive trust in this case is governed by Connecticut common law. Although Connecticut case law does not provide clear precedent under the specific facts of this adversary proceeding, the Connecticut Supreme Court has articulated generally the circumstances under which a constructive trust will be recognized:

> ... a constructive trust arises... against one, who by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds legal title to property which he ought not, in equity and good conscience, hold and enjoy.

*Zack v. Guzauskas,* 171 Conn. 98, 103, 368 A.2d 193 (1976) *(quoting* 76 Am.Jur.2d, *Trusts* § 221). More specifically, commentary to the Restatement of Trusts points out that if one entity induces another by fraud to deposit funds with it, then it becomes a constructive trustee of the money deposited. Restatement of Trusts (Second) § 12, cmt. I (1959). Thus, if the Defendant here were able to demonstrate that certain critical deposits were fraudulently solicited from him, he might well be deemed to be the beneficiary of a constructive trust arising at the time of such deposit(s).

■ Yet, even if the Defendant can establish that he was fraudulently induced to deposit funds [8], he must also be able to *identify* the funds that are the subject of his constructive trust claim. *See* 76 Am. Jur.2d, *Trusts* § 252 (1975). In the context and parlance of the present litigation, this requirement compels the Defendant to *trace* the Deposited Funds through to the Transfers.[9] *Id.* This is a difficult burden because, as noted and found *supra,* the deposited funds were commingled by the Debtor in a unitary bank account (hereafter, the "Commingled Account") together with, *inter alia,* (i) funds of other "depositors", (ii) income derived from investments, and (iii) the general revenue of the legal practice of the Debtor. Further, the

---

7. In at least one other Circuit federal courts decline to give retroactive effect to findings of circumstances giving rise to a constructive trust, at least when assessing the asset composition of a bankruptcy estate relative to the constructive trust claim of a third party. *See, e.g., XL/Datacomp v. Wilson (In re Omegas Group, Inc.),* 16 F.3d 1443 (6th Cir.1994). That Court's view springs from its belief that under common law a constructive trust is not really a trust at all, but rather a *remedy,* which can only have prospective effect from the time a court issues it.

8. The Defendant has introduced no evidence of the Debtor's fraudulent intent as of the time of solicitation of any specific deposit.

9. Despite the fact that the Defendant is using the constructive trust claim as a "shield" rather than a "sword", *see Daly v. Radulesco,* Adv. Pro. No. 97–3010, tracing is a required element of his defense. This is because the implication of a *constructive* trust—as opposed to the recognition of an *express* trust— is a remedial action in contravention of the intentions of the parties, *i.e.* the proposed constructive trustee never intended to hold the subject funds in trust. Thus, his subsequent payment of funds to the alleged constructive trust beneficiary cannot be construed as the trustee's identification of those funds as trust assets.

Commingled Account was actively utilized by the Debtor for the payment of its obligations. Although the law indulges certain presumptions and fictions which aid a constructive trust claimant in tracing his funds into and through a commingled account, *see id.* at §§ 266–268, the Defendant has failed at a basic level to present facts from which this Court could trace the funds he deposited. Thus the constructive trust claim must fail for lack of proof.

### C. Statutory Defenses.

The Defendant argues, alternatively, that even if—as this Court has found and concluded—the Transfers are deemed avoidable preferences under Section 547(b), they nonetheless constitute "ordinary course" transfers, and thus qualify for an exception to a bankruptcy trustee's avoiding powers under the terms of Section 547(c)(2). That statutory defense provides in pertinent part as follows:

(c) The trustee may not avoid under this section a transfer—

\* \* \* \*

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms . . . .

11 U.S.C. § 547(c) (1995).

■ A defendant in a preference action bears the burden of proving his entitlement to a Section 547(c) defense. 11 U.S.C. § 547(g) (1995). In the instant case the Defendant has failed to meet that burden.

Courts routinely reject the "ordinary course" defense in the context of a Ponzi scheme, *e.g., Danning v. Bozek (In re Bullion Reserve of North America)*, 836 F.2d 1214 (9th Cir.1988), at least as to preference recipients who are investors or depositors in the Ponzi scheme. *E.g., Sender v. Heggland Family Trust (In re Hedged–Invs. Assocs., Inc.)*, 48 F.3d 470, 474–76 (10th Cir.1995). The fundamental analysis of these courts was that a transfer by a Ponzi scheme debtor to a depositor or investor is not in the ordinary course of the business of the debtor, and/or does not follow ordinary business terms, since no lawful entity *ordinarily* pays fraudulently-obtained revenue to early investors. This Court concurs generally with that reasoning.[10]

■ In the instant case the Court finds that although there is insufficient evidence in the record to establish that the Debtor was engaged in a Ponzi scheme throughout the *entire* period of the Defendant's depository relationship with the Debtor, sufficient evidence has been adduced for the Court to find that a Ponzi or Ponzi-like scheme was in operation at the time of the Transfers. Hence those Transfers were made neither "in the ordinary course of business or financial affairs of the debtor" nor "according to ordinary business terms", as required by Section 547(c)(2)(B) and (C). Accordingly, the shelter of Section 547(c)(2) is unavailable to the Defendant.

### V. CONCLUSION

For the foregoing reasons, judgment shall enter in favor of the Plaintiff. This Memorandum of Decision shall constitute the Court's findings of fact and conclusions of law for the purposes of Fed. R. Bank. P. 7052.

---

**10.** Such analysis has even greater force in the instance of a law firm, such as the Debtor here, which does not traditionally or legitimately engage in the provision of investment or banking services.

## JUDGMENT

This proceeding having come before the Court after trial, and the Court having this day entered its Memorandum of Decision on Complaint to Determine Dischargeability of Debts, in accordance with which it is hereby

**ORDERED** that a monetary judgment shall enter against the Defendant in favor of the Plaintiff in the amount of $15,000.00; and

**IT IS FURTHER ORDERED** that the Plaintiff's prayer for prejudgment interest and costs is **DENIED**.