**In re John A. CARROZZELLA, Debtor.**

**Michael J. Daly, Trustee, Plaintiff,**

**v.**

**Robert Testo, et al., Defendants.**

**Bankruptcy No. 95–31228.**
**Adversary No. 96–3078.**

United States Bankruptcy Court,
D. Connecticut.

Sept. 25, 2001.

See also 267 B.R. 663.

Douglas S. Skalka, Neubert, Pepe & Monteith, P.C., New Haven, CT, for Plaintiff–Trustee.

Stephen M. Kindseth, Zeisler & Zeisler, P.C., Bridgeport, CT, for Defendant Testo.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON TRUSTEE'S COMPLAINT FOR CONTRIBUTION AND OTHER RELIEF

ALBERT S. DABROWSKI, Bankruptcy Judge.

### I. INTRODUCTION

█ The captioned adversary proceeding presents another chapter in the sordid history of the financial dealings of Attorney John A. Carrozzella (hereafter, "Carrozzella" or the "Debtor"). These Findings of Fact and Conclusions of Law assume familiarity with a pattern of fraud perpetrated by Carrozzella upon scores of clients and other lay-persons over a period spanning two decades. *See e.g., Daly v. Biafore (In re Carrozzella & Richardson)*, 237 B.R. 536 (Bankr.D.Conn.1999).[1] The present proceeding, however, does not involve fraud, but rather seeks to untangle the business relationships among certain sophisticated co-adventurers in connection with an investment in a residential condominium unit located in Atlantic City, New Jersey (hereafter, the "Condo").

Prior matters within this, and a related, adversary proceeding[2] have resulted in

---

1. Beginning sometime in the late 1980's, Carrozzella participated in a criminal enterprise possessing many of the attributes of a "Ponzi" scheme—in which funds placed with an entity by later investors/depositors are secretly and illicitly utilized to pay returns and repay principal to earlier depositors.

2. The related proceeding is Adv. Pro. No. 96–3071 in the bankruptcy case of *Thomas J.*

judgments against Defendants Kowalski and Brandner. The present trial proceedings concern the Plaintiff–Trustee's claims against Defendant Robert Testo (hereafter, "Testo") only.

The Trustee's amended Complaint consists of three separate claims against Testo. First, the Trustee alleges that Testo was a partner with Carrozzella in connection with ownership of the Condo, and is obligated by statute to Carrozzella's bankruptcy estate due to his *under*-contribution, and Carrozzella's corresponding *over*-contribution, to that partnership (hereafter, the "Partnership Contribution Claim").[3] Second and similarly, the Trustee asserts that as a co-obligor on the Mortgage Note, Testo is liable under common-law principles for contribution toward that debt (hereafter, the "Mortgage Contribution Claim").[4] Third, the Trustee claims that Testo was "unjustly enriched" vis-a-vis Carrozzella by virtue of Partnership tax losses unfairly received and utilized by him over a period of years (hereafter, the "Unjust Enrichment Claim").[5]

As set forth in more detail hereafter, judgment shall enter in favor of the Defendant on all Claims.

## II. JURISDICTION

The United States District Court for the District of Connecticut has subject matter jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this proceeding on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(F).

## III. FINDINGS OF FACT

This proceeding is before the Court for decision after trial. The Court's findings of fact are derived from the following sources: (i) the parties' "Stipulation to Facts and the Admissibility of Documents as Full Exhibits", (ii) the evidentiary record at trial, and (iii) the Court's independent examination of the official record of the instant bankruptcy case and adversary proceeding.

1. On July 19, 1995 (hereafter, the "Petition Date"), an involuntary petition (hereafter, the "Petition") was filed in this Court against Carrozzella, *inter alia*, seeking relief under Chapter 7 of the Bankruptcy Code. On August 21, 1995, an Order for Relief entered upon the Petition, and thereafter the Plaintiff, Michael J. Daly (heretofore and hereafter, the "Plaintiff" or "Trustee"), was appointed as trustee of Carrozzella's Chapter 7 bankruptcy estate.

2. The Trustee brings the claims of this adversary proceeding in his capacity as successor to the rights of the Debtor, Carrozzella.

3. At all times relevant to this proceeding, Testo was a lawyer and retired Connecticut Superior Court judge.

4. Testo formed a relationship with Carrozzella as early as 1959, when both

---

*Richardson,* 267 B.R. 663 (Bankr.D.Conn. 2001).

**3.** The Partnership Contribution Claim is pled as the Second Claim for Relief in the Trustee's Complaint.

**4.** The Mortgage Contribution Claim was not part of the Trustee's original Complaint. However, by Order dated September 24, 2001

(Doc. I.D. No. 78), this Court granted the *Trustee's Motion to Amend Complaint to Conform to the Evidence Introduced at Trial Pursuant to Rule 15(b) of the Federal Rules of Civil Procedure* (Doc. I.D. No. 61), adding the Mortgage Contribution Claim.

**5.** The Partnership Contribution Claim is pled as the Fifth Claim for Relief in the Trustee's Complaint.

were serving as representatives in the Connecticut General Assembly. From that time they enjoyed a relationship which is best characterized as primarily social in nature.

5. In 1985, Carrozzella, Thomas J. Richardson (hereafter, "Richardson"), and others (hereafter, "Partner(s)") formed a partnership (hereafter, the "Partnership") to purchase and hold the Condo. Testo was solicited by Carrozzella to join in that venture. Although Testo had little desire to become involved with the Partnership, he eventually did so, primarily as a favor to Carrozzella.

6. Specifically, Carrozzella asked Testo to "sign a mortgage deed and note with a couple of friends", but assured him that the endeavor "wouldn't cost [him] a dime".

7. At a closing (hereafter, the "Closing") in Atlantic City Testo executed a mortgage deed and note (hereafter, the "Mortgage Note") in favor of the Connecticut National Bank in connection with the Partnership's acquisition of the Condo.

8. Testo was a Partner of the Partnership; and from 1985 through 1991 was entitled to receive a 25% share of Partnership profits (hereafter, the "Profit Percentage").

9. Testo's understanding was that Carrozzella had instigated the purchase of the Condo for his own purposes, and had sought out Partners only because the transaction lender—Connecticut National Bank—insisted upon having multiple obligors if the Condo was to be acquired without a down payment, as was Carrozzella's intention.

10. Testo never considered his Partnership interest an investment, and he never had an expectation of financial gain from his involvement. He did, however, have some expectation of being able to use the Condo when in Atlantic City. In fact, Testo stayed overnight at the Condo on one or more occasions.

11. On at least two occasions after the Closing, Testo received letters from Carrozzella which stated that certain amounts of money had been "laid out" on behalf of the Partnership by him and/or Richardson. Testo was concerned about the possible implication of these letters, and questioned Carrozzella about them. Carrozzella replied that the letters were simply a matter of record-keeping, and that Testo should not worry, repeating again, "it's not going to cost you a dime".

12. Nearly every year of the Partnership's holding of the Condo, the income generated by it fell short of the expenses associated with it (hereafter, the "Operating Deficits"), creating losses for tax purposes.

13. The Operating Deficits were covered and satisfied by Carrozzella and Richardson from the funds (hereafter, the "Coverage Funds") of the law firm in which they both were partners (hereafter, the "Law Firm").[6] The Partnership credited the Coverage Funds as follows: 60% to Carrozzella and 40% to Richardson.

14. Through the initiative of his accountant, Testo was allocated a 25% share of the Partnership's losses for tax years 1985—1991.[7] Those losses (hereafter, the

---

**6.** The Plaintiff's expert witness, Richard Finkel, CPA—a forensic accountant—described the financial structure of the Law Firm as "one big pot", into which was deposited all manner of receipts by, and revenue of, the Law Firm. Thus at any given time the Law Firm account(s) contained, *inter alia*, (i) deposited funds of investors and depositors, *see,*

*e.g., Biafore, supra,* and (ii) the general revenue of the legal practice of the Debtor.

**7.** At trial, this Court received as evidentiary exhibits Testo's 1989—1995 tax returns. Tax returns for the years 1985—1988 were not offered by the Plaintiff.

"Partnership Loss(es)") were utilized by Testo only in tax years 1985—1989.[8]

## IV. CONCLUSIONS OF LAW

The Trustee brings the Claims of this adversary proceeding under the authority of Bankruptcy Code Section 542(b), seeking to collect upon claims allegedly possessed by Carrozzella prior to the filing of the Petition in this case.

### A. Partnership Contribution Claim.

■ 1. Under Connecticut General Statutes § 34–56 "[e]ach partner... must contribute toward the losses ... sustained by the partnership according to his share in the profits." Thus Testo was presumptively responsible to cover 25% of the Partnership Losses.

2. Partners, such as Carrozzella, who contributed to Partnership Losses in amounts greater than their Profit Percentage held a putative Partnership Contribution Claim against Testo.

3. The record reveals that Carrozzella repeatedly assured Testo that his involvement with the Partnership wouldn't cost him anything (hereafter, the "Assurances").

■ 4. A waiver is the voluntary and intentional relinquishment of a known right. *E.g., Heyman Assoc. No. 1 v. Insurance Co. of State of Pennsylvania.*, 231 Conn. 756, 777, 653 A.2d 122 (1995). A waiver need not be expressed explicitly, but can be implied from more general statements and other consistent conduct. *See, e.g., Stewart v. Tunxis Service Center,* 237 Conn. 71, 80–81, 676 A.2d 819 (1996).

■ 5. By giving Testo the Assurances, Carrozzella waived his Partnership Contribution Claim.

■ 6. The doctrine of estoppel is based on equitable notions of fair dealing, good faith and justice. Its purpose and effect is "to forbid one to speak against his own act, representation, or commitment to the injury of one to whom they were directed and who reasonably relied thereon." 28 Am.Jur.2d, *Estoppel and Waiver* § 28 (1966). To establish equitable estoppel it must be shown that, (i) the party against whom it is claimed did or said something calculated or intended to induce reliance on such act or statement; and (ii) the other party changed its position in reliance on such act or statement, thereby incurring some injury. *See, e.g., Herbert S. Newman & Partners, P.C. v. CFC Construction, L.P.,* 236 Conn. 750, 768, 674 A.2d 1313 (1996).

■ 7. By giving Testo the Assurances, Carrozzella became estopped from asserting a Partnership Contribution Claim.

■ 8. For the purposes of claims brought under the authority of Bankruptcy Code Section 542(b), a trustee "steps into the shoes" of his debtor, *cum onere. See, e.g., Sender v. Simon,* 84 F.3d 1299, 1305 (10th Cir.1996). Thus, in this proceeding the Trustee is bound and limited by any actions taken, and representations made, by Carrozzella in the pre-Petition period.

9. The Defendant is entitled to Judgment on the Second Claim for Relief of the Trustee's Complaint.

**8.** Although there is no direct evidence (*i.e.* tax returns or live testimony) of the fact that Testo utilized the losses in tax years 1985—1987, Mr. Finkel testified persuasively that one could reasonably infer such utilization from other known facts. Testo's joint individual tax returns for tax years 1988 and 1989 evidence a utilization of Partnership losses. The tax returns for tax years 1990 and 1991 note a Partnership loss carryover to future years. The tax returns for tax years 1992—1995 simply reference a Partnership interest without utilizing or carrying over specific losses.

## B. Mortgage Contribution Claim.

■ For the reasons stated in Section IV.A., *supra*, Carrozzella waived and became estopped from asserting a Mortgage Contribution Claim. Thus the Trustee may not now prove such a claim against Testo, and Testo is entitled to judgment thereon.

## C. Unjust Enrichment Claim.

■ 1. "A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another." *Providence Electric Co., Inc. v. Sutton Place, Inc.,* 161 Conn. 242, 246, 287 A.2d 379 (1971) (internal citations omitted).

■ 2. The Trustee's unjust enrichment Claim was not waived, and is not estopped, by virtue of the Assurances since those statements served to assure Testo only that his involvement in the Partnership would be without *cost*, not that he could reap and retain an undue *benefit*.

■ 3. The record reveals that Testo has been *enriched* to some degree through his utilization of Partnership losses in connection with his personal income tax filings for tax years 1988 and 1989.[9] However, given the state of the evidentiary record in this proceeding it is impossible to determine (i) the extent of value accruing to

Testo from the utilization of those Partnership Losses, and (ii) the opportunity cost to Carrozzella in ceding to Testo tax losses which may rightly have been Carrozzella's by virtue of his satisfaction of Partnership Losses.

4. Among the impediments to a determination of the extent of value to Testo are the following: (i) the impossibility of ascertaining total taxable income for 1988 and 1989 due to the absence in the trial exhibits of the reverse side of Form 1040 for each year; (ii) the absence of any presentation of the marginal tax rate(s) applicable to Testo for 1988 and 1989;[10] and (iii) the fact that some undeterminable "enrichment" would have accrued to Testo's joint taxpayer spouse, Elva Testo, who is not a defendant in this proceeding.[11]

5. The impediments to the Court's determination of Carrozzella's opportunity cost are more fundamental—the record is completely devoid of any information on Carrozzella's personal income tax status in the relevant time period.

6. Having failed to carry his burden of proof, judgment must enter against the Trustee on his Complaint's Fifth Claim for Relief.

## V. CONCLUSION

For the foregoing reasons, judgment shall enter in favor of the Defendant on all

---

9. Full or partial returns for tax years 1988–1995 were offered as trial exhibits by Testo, and were admitted in full as group Exhibit 5. Only the tax returns for tax years 1988 and 1989 evidence the utilization of Partnership Losses. The tax returns for tax years 1990 and 1991 note a Partnership Loss carryover to future years. The tax returns for tax years 1992—1995 simply reference a Partnership interest without utilizing or carrying over specific losses.

10. The Court has insufficient information from which to take judicial notice of such rate(s).

11. Mr. Finkel testified that he had insufficient documentary material from which to calculate the actual benefit derived from the utilization of Partnership losses.

Claims for Relief in this adversary pro-
ceeding.