In re Thomas J. RICHARDSON,
Debtor.

Michael J. Daly, Trustee, Plaintiff,

v.

Robert Testo, et al., Defendants.

Bankruptcy No. 95–31229.
Adversary No. 96–3071.

United States Bankruptcy Court,
D. Connecticut.

Sept. 25, 2001.

See also 267 B.R. 656.

Douglas S. Skalka, Neubert, Pepe & Monteith, P.C., New Haven, CT, for Plaintiff–Trustee.

Stephen M. Kindseth, Zeisler & Zeisler, P.C., Bridgeport, CT, for Defendant Testo.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON TRUSTEE'S COMPLAINT FOR CONTRIBUTION AND OTHER RELIEF

ALBERT S. DABROWSKI, Bankruptcy Judge.

## I. INTRODUCTION

■ The captioned adversary proceeding presents another chapter in the sordid history of the financial dealings of Attorneys Carrozzella and Richardson. These Findings of Fact and Conclusions of Law assume familiarity with a pattern of fraud perpetrated by Carrozzella upon scores of clients and other lay-persons over a period spanning two decades. *See e.g., Daly v. Biafore (In re Carrozzella & Richardson),* 237 B.R. 536 (Bankr.D.Conn.1999).[1] The present proceeding, however, does not involve fraud, but rather seeks to untangle the business relationships among certain sophisticated co-adventurers in connection with an investment in a residential condominium unit located in Atlantic City, New Jersey (hereafter, the "Condo").

Prior matters within this, and a related, adversary proceeding[2] have resulted in judgments against Defendants Kowalski and Brandner. The present trial proceedings concern the Plaintiff–Trustee's claims against Defendant Robert Testo (hereafter, "Testo") only.

The Trustee's amended Complaint consists of three separate claims against Testo. First, the Trustee alleges that Testo was a partner with Richardson in connection with ownership of the Condo, and is obligated by statute to Richardson's bankruptcy estate due to his *under*-contribution, and Richardson's corresponding *over*-contribution, to that partnership (hereafter, the "Partnership Contribution Claim").[3] Second and similarly, the Trustee asserts that as a co-obligor on the Mortgage Note, Testo is liable under common-law principles for contribution toward that debt (hereafter, the "Mortgage Contribution Claim").[4] Third, the Trustee claims that Testo was "unjustly enriched" vis-a-vis Richardson by virtue of Partnership tax losses unfairly received and utilized by him over a period of years (hereafter, the "Unjust Enrichment Claim").[5]

As set forth in more detail hereafter, a monetary judgment shall enter in favor of the Plaintiff–Trustee on a theory of contribution among partners.

1. Beginning sometime in the late 1980's, Richardson participated in a criminal enterprise possessing many of the attributes of a "Ponzi" scheme—in which funds placed with an individual or other entity by investors/depositors are secretly and illicitly utilized to pay returns and repay principal to earlier depositors.

2. The related proceeding is Adv. Pro. No. 96–3078 in the bankruptcy case of *John A. Carrozzella,* 267 B.R. 656 (Bankr.D.Conn.2001).

3. The Partnership Contribution Claim is pled as the Second Claim for Relief in the Trustee's Complaint.

4. The Mortgage Contribution Claim was not part of the Trustee's original Complaint. However, by Order dated September 24, 2001 (Doc. I.D. No. 94), this Court granted the *Trustee's Motion to Amend Complaint to Conform to the Evidence Introduced at Trial Pursuant to Rule 15(b) of the Federal Rules of Civil Procedure* (Doc. I.D. No. 71), adding the Mortgage Contribution Claim.

5. The Unjust Enrichment Claim is pled as the Fifth Claim for Relief in the Trustee's Complaint.

## II. JURISDICTION

The United States District Court for the District of Connecticut has subject matter jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this proceeding on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(F).

## III. FINDINGS OF FACT

This proceeding is before the Court for decision after trial. The Court's findings of fact are derived from the following sources: (i) the parties' "Stipulation to Facts and the Admissibility of Documents as Full Exhibits", (ii) the evidentiary record at trial, and (iii) the Court's independent examination of the official record of the instant case and adversary proceeding.

1. On July 19, 1995 (hereafter, the "Petition Date"), an involuntary petition (hereafter, the "Petition") was filed in this Court against the Debtor, Thomas J. Richardson (hereafter, "Richardson" or "Debtor"), *inter alia*,[6] seeking relief under Chapter 7 of the Bankruptcy Code. On August 21, 1995, an Order for Relief entered upon the Petition, and thereafter the Plaintiff, Michael J. Daly (heretofore and hereafter, the "Plaintiff" or "Trustee") was appointed as trustee of Richardson's Chapter 7 bankruptcy estate.

2. The Trustee brings the claims of this adversary proceeding in his capacity of successor to the rights of the Debtor, Richardson.

3. At all times relevant to this proceeding, Defendant Robert Testo (hereafter, "Testo") was a lawyer and retired Connecticut Superior Court judge.

4. Testo formed a relationship with Carrozzella as early as 1959, when both were serving as representatives in the Connecticut General Assembly. From that time they enjoyed a relationship which is best characterized as primarily social in nature. Testo's relationship with Richardson was incidental to his relationship with Carrozzella. He was acquainted, but had extremely little contact, with Richardson over the years.

5. In 1985, Richardson, John A. Carrozzella (hereafter, "Carrozzella"), and others (hereafter, "Partner(s)"), formed a partnership (hereafter, the "Partnership") to purchase and hold the Condo. Testo was solicited by Carrozzella to join in that venture. Although Testo had little desire to become involved with the Partnership, he eventually did so, primarily as a favor to Carrozzella.

6. Specifically, Carrozzella asked Testo to "sign a mortgage deed and note with a couple of friends", and assured him that the endeavor "wouldn't cost [him] a dime"..

7. At a closing (hereafter, the "Closing") in Atlantic City Testo executed a mortgage deed and note (hereafter, the "Mortgage Note") in favor of the Connecticut National Bank in connection with the Partnership's acquisition of the Condo.

8. Testo was a Partner of the Partnership; and from 1985 through 1991 was entitled to receive a 25% share of Partnership profits (hereafter, the "Profit Percentage").

9. Richardson's Profit Percentage was 14% from 1985 through 1990, 18% in 1991, and 30% from 1992 through Partnership dissolution.

10. Testo's understanding was that Carrozzella had instigated the purchase of

---

6. A petition was also filed against Richardson's law partner, John A. Carrozzella (hereafter, "Carrozzella").

the Condo for his own purposes, and had sought out Partners only because the transaction lender—Connecticut National Bank—insisted upon having multiple obligors if the Condo was to be acquired without a down payment, as was Carrozzella's intention.

11. Testo never considered his Partnership interest an investment, and he never had an expectation of financial gain from his involvement. He did, however, have some expectation of being able to use the Condo when in Atlantic City. In fact, Testo stayed overnight at the Condo on one or more occasions.

12. On at least two occasions after the Closing, Testo received letters from Carrozzella which stated that certain amounts of money had been "laid out" on behalf of the Partnership by him and/or Richardson. Testo was concerned about the possible implication of these letters, and questioned Carrozzella about them. Carrozzella replied that the letters were simply a matter of record-keeping, and that Testo should not worry, "it's not going to cost [you] a dime".

13. All of Testo's dealings with and concerning the Partnership were through Carrozzella; Testo had no relevant contact with Richardson concerning such matters.

14. Richardson did not ratify any of Carrozzella's representations to Testo.

15. Nearly every year of the Partnership's holding of the Condo, the income generated by it fell short of the expenses associated with it (hereafter, the "Operating Deficits"), creating losses for tax purposes.

16. The Operating Deficits were covered and satisfied by Richardson and Carrozzella from the funds (hereafter, the "Coverage Funds") of the law firm in which they both were partners (hereafter, the "Law Firm").[7] The Partnership credited the Coverage Funds as follows: 60% to Carrozzella and 40% to Richardson.

17. Throughout the period of the Partnership's ownership of the Condo, Testo contributed $10,575.00 to the Partnership costs associated with such ownership.[8]

18. Through the initiative of his accountant, Testo was allocated a 25% share of the Partnership's losses for tax years 1985—1991.[9] Those losses (hereafter, the "Partnership Loss(es)") were utilized by Testo only in tax years 1985—1989.[10]

## IV. CONCLUSIONS OF LAW

The Trustee brings the Claims of this adversary proceeding under the authority of Bankruptcy Code Section 542(b), seek-

---

7. The Plaintiff's expert witness, Richard Finkel, CPA—a forensic accountant—described the financial structure of the Law Firm as "one big pot", into which was deposited all manner of receipts by, and revenue of, the Law Firm. Thus at any given time the Law Firm account(s) contained, *inter alia*, (i) deposited funds of investors and depositors, *see*, *e.g.*, *Biafore, supra,* and (ii) the general revenue of the legal practice of the Debtor.

8. Testo credibly testified that he never made a contribution of money or other property to the Partnership. However, certain of the documents admitted at trial evidence that Testo was credited with a $10,575.00 contribution to the Partnership in its first year.

9. At trial, this Court received as evidentiary exhibits Testo's 1989—1995 tax returns. Tax returns for the years 1985—1988 were not offered by the Plaintiff.

10. Although there is no direct evidence (*i.e.* tax returns or live testimony) of the fact that Testo utilized Partnership Losses in tax years 1985—1987, Mr. Finkel testified persuasively that one could reasonably infer such utilization from other known facts. Testo's joint individual tax returns for tax years 1988 and 1989 directly evidence a utilization of Partnership Losses. The tax returns for tax years 1990 and 1991 do not evidence utilization but, rather, claim a loss carry-over to future years.

ing to collect upon claims allegedly possessed by Richardson prior to the filing of the Petition in this case.

## A. Partnership Contribution Claim.

 1. For the purposes of claims brought under the authority of Bankruptcy Code Section 542(b), a trustee "steps into the shoes" of his debtor, *cum onere. See, e.g., Sender v. Simon,* 84 F.3d 1299, 1305 (10th Cir.1996). Thus, in this proceeding the Trustee is bound and limited by any actions taken, and representations made, by Richardson in the pre-Petition period.

 2. Although the record reveals that Carrozzella repeatedly assured Testo that his involvement with the Partnership "wouldn't cost [him] a dime" (hereafter, "Carrozzella's Assurances"), no similar statements were made by Richardson. At most, Carrozzella's Assurances were binding on Carrozzella, and perhaps the Partnership, *see* C.G.S. § 34–47 (1995), but not upon Richardson.

3. There is no basis in the record to determine that Richardson ever ratified Carrozzella's Assurances. The record is silent on this score; yet it was the Defendant's burden to produce evidence of ratification.

4. Richardson did not waive, and was not estopped from pursuing, a claim for a monetary contribution from Testo under Section 34–56(a) of the Connecticut General Statutes.

 5. Under Connecticut General Statutes § 34–56 "[e]ach partner... must contribute toward the losses ... sustained by the partnership according to his share in the profits."

6. To the extent Richardson covered more than his Profit Percentage of the Operating Deficits, he possessed a pre-Petition claim against Partners—including Testo—who did not contribute toward the Operating Deficits in an amount corresponding to their Profit Percentage for any given year.

7. The spreadsheet titled, "Calculation of Proportionate Share", appended to *Robert J. Testo's Post–Trial Brief* (Doc. I.D. No. 88), correctly analyzes, calculates, and presents the proportionate share of the Operating Deficits due from Testo for each year, 1985—1994. The total share due from Testo over the life of the Partnership was $89,992.50, which after crediting his $10,575.00 contribution, leaves a shortfall of $79,417.50.

8. Since Richardson was credited with coverage of 40% of the Operating Deficits, he is entitled to contribution from Testo in the amount of $31,767.00 ($79,417.50 × .40).

9. Testo has failed to establish that the funds which Richardson was credited with supplying to the Partnership were not funds in which he held an ownership interest. Although this Court has previously recognized that the Law Firm assets may have included funds impressed with an express trust in favor of individual fraud victims, *see Daly v. Deptula, et al. (In re Carrozzella & Richardson),* 255 B.R. 267 (Bankr.D.Conn.2000),[11] Testo has presented no evidence from which the Court could determine that any of the Coverage Funds were funds in which entities other than Carrozzella and Richardson held title. The only evidence received on the composition of the Coverage Funds was the testi-

---

11. On only one occasion in the related Carrozzella and Richardson cases has this Court been presented with sufficient evidence to determine that certain funds were impressed with a trust. Even that determination was reversed by a Bankruptcy Appellate Panel. *See Daly v. Radulesco (In re Carrozzella & Richardson),* 237 B.R. 544 (Bankr.D.Conn. 1999), *rev'd* 237 B.R. 544 (2d Cir. BAP 2000).

mony of the Trustee's expert, Mr. Finkel, who stated, *inter alia*, that at least some of the funds in the Law Firm "account" were professional fees earned by Richardson. *See* footnote 7, *supra.* The fact that Mr. Finkel acknowledged that the Law Firm Account also contained the funds of so-called "investors" does not in itself lead to a conclusion that Carrozzella and/or Richardson lacked title to any of those "investor" funds. In the absence of *proof* of trust fund status, such funds must be assumed to be the property of Carrozzella, Richardson and/or their Law Firm—much akin to loan proceeds in the hands of a borrower.

10. The Trustee is not barred by a statute of limitation from bringing a Partnership Contribution Claim under C.G.S. § 34–56.

11. The Trustee is not barred by laches from bringing a Partnership Contribution Claim under C.G.S. § 34–56.

12. The Trustee is entitled to Judgment on his Complaint's Second Claim for Relief in the amount of $31,767.00.

## B. Mortgage Contribution Claim.

Since payments under the Mortgage Note were a component part of the expenses which created the Operating Deficits, and because the Trustee's Mortgage Contribution Claim is essentially pled in the alternative, it is unnecessary for the Court to rule on that Claim in light of its judgment on the Trustee's Partnership Contribution Claim.

## C. Unjust Enrichment Claim.

The Trustee's Unjust Enrichment Claim is essentially pled in the alternative. As asserted in the Trustee's *Trial Brief. . . .* (Doc. I.D. No. 83), Testo has been unjustly enriched only if he "is *not* required to contribute his share of the losses of the Partnership. . . ." (emphasis supplied). Accordingly, it is unnecessary for the

Court to rule on the Trustee's Unjust Enrichment Claim since, through judgment on the Trustee's Partnership Contribution Claim, Testo *is* required to contribute toward Partnership Losses.

## V. CONCLUSION

For the foregoing reasons, a monetary judgment in the amount of $31,767.00 shall enter in favor of the Plaintiff on his Complaint's Second Claim for Relief.

**IT IS FURTHER ORDERED** that each party shall bear its own costs.